EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Dra. Liana Moreno Ferrer<br><br>Recurrida<br><br>v.<br><br>Junta Reglamentadora del Cannabis Medicinal<br><br>Peticionaria | 2022 TSPR 64<br><br>209 DPR ____ |

Número del Caso: CC-2020-192


Fecha: 20 de mayo de 2022

Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Amir Cristina Nieves Villegas
    Procurador General Auxiliar

Abogado de la parte recurrida:

    Lcdo. Carlos J. Sagardía-Abreu

Materia: Sentencia del Tribunal con Opiniones Disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Dra. Liana Moreno Ferrer<br><br>        Recurrida<br><br>          v.<br><br>Junta Reglamentadora del<br>Cannabis Medicinal<br><br>        Peticionaria | | CC-2020-0192 |

SENTENCIA

En San Juan, Puerto Rico, a 20 de mayo de 2022.

Nos corresponde determinar si los foros inferiores erraron al eximir a la Dra. Liana Moreno Ferrer (doctora Moreno Ferrer o recurrida) de agotar los remedios administrativos provistos en la Ley Núm. 42-2017, *infra*, para canalizar su reclamo en contra de la Junta Reglamentadora de Cannabis Medicinal (JRCM o peticionaria).

Al examinar cuidadosamente los hechos y las disposiciones legales aplicables, adelantamos que, contrario a lo resuelto por el foro apelativo intermedio y el foro de instancia, no procedía relevar a la recurrida de agotar el procedimiento administrativo. La recurrida contaba con un remedio adecuado y completo en Ley para impugnar tanto la multa administrativa que le fue impuesta, como su reclamo en cuanto a la nulidad del Art. 10(D) del Reglamento Núm. 9038, *infra*. La doctora Moreno Ferrer no demostró la existencia de circunstancias extraordinarias que ameritaran prescindir del

trámite administrativo, por ende, no procedía que el foro primario atendiera el recurso presentado ante su consideración.

A continuación, reseñamos los antecedentes fácticos que originaron la controversia que nos ocupa.

**I**

El presente caso se remonta al 29 de abril de 2019, cuando la JRCM emitió una *Notificación de Infracción* en contra de la doctora Moreno Ferrer por alegada infracción al Art. 10 (D) del *Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites*, Reglamento Núm. 9038 de 2 de julio de 2018 (Reglamento Núm. 9038). Así, se le impuso una multa administrativa de $5,000.00 por haber emitido una recomendación médica para que se autorizara el uso de cannabis medicinal a una persona -quien resultó ser una inspectora - mediante una llamada telefónica (telemedicina). Ello, a pesar de que el Reglamento Núm. 9038 expresamente exige que se evalúe al paciente a través de un método audiovisual. Cabe destacar que, en la notificación, la recurrida fue apercibida de su derecho a solicitar una vista administrativa ante la JRCM para impugnar la multa.

No conteste con la multa administrativa impuesta, y sin acudir al cauce administrativo a solicitar una vista ante la JRCM, el 13 de mayo de 2019, la doctora Moreno Ferrer presentó una *Demanda de Injuction Preliminar y Permanente,*

*y Sentencia Declaratoria* en contra de la JRCM. En esencia, peticionó que se declarara nulo el Art. 10(D) del Reglamento Núm. 9038, toda vez que excede los poderes que le fueron delegados a la JRCM. Además, adujo que la JRCM no tiene autoridad para reglamentar la práctica de la telemedicina, ya que dicha autoridad se le confirió exclusivamente a la Junta de Licenciamiento de Disciplina Médica (JLDM) en virtud de la Ley Núm. 168-2018 conocida como *Ley para el Uso de la Telemedicina en Puerto Rico* (Ley Núm. 168-2018). Finalmente, respecto a la omisión de agotar remedios administrativos, planteó que la controversia del caso de autos es una de estricto derecho y que proseguir el cauce administrativo constituye un esfuerzo fútil.

Ese mismo día, el foro primario dictó una *Orden* en la cual le concedió a la doctora Moreno Ferrer un término de veinticuatro (24) horas para que mostrara causa por la cual no se debía desestimar su *Demanda*, ello, en virtud de la doctrina de agotamiento de remedios administrativos. Así las cosas, mediante una *Moción en Cumplimiento de Orden*, la recurrida reiteró su contención relacionada a agotar remedios administrativos. Sostuvo que solicitar un remedio ante la JRCM constituiría un ejercicio incierto, pues dicho organismo aún no cuenta con oficiales examinadores que puedan celebrar vistas administrativas.

El 21 de mayo de 2019, la JRCM presentó una *Moción de Desestimación*. Alegó que su actuación no fue arbitraria,

caprichosa ni puede catalogarse como una *ultra vires*, pues actuó conforme a la Ley Núm. 42-2017, 24 LPRA sec. 2621 *et seq.*, conocida como *Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites* (Ley Núm.42-2017), y su Reglamento Núm. 9038. Reiteró que la recurrida tiene a su haber remedios adecuados en ley.

Luego de varios trámites procesales, el 24 de mayo de 2019, la JRCM suplementó su solicitud de desestimación. En la misma señaló que el entonces Director Ejecutivo de la JRCM, el Lcdo. Antonio Quilichini, había confirmado que la peticionaria tenía ante su consideración una apelación por el Art. 10 (D) del Reglamento Núm. 9038 presentada por el Dr. Gerald C. Mazo Cruzado; y, en donde, el representante legal del referido doctor era el mismo que el representante legal de la recurrida en el presente caso. Finalmente, insistió que la doctora Moreno Ferrer tenía un remedio adecuado en ley lo cual demuestra la improcedencia del recurso extraordinario solicitado.

El 3 de junio de 2019, la recurrida presentó una *Oposición a Moción en Solicitud de Desestimación*. Planteó, en lo pertinente, que: (1) la conducta caprichosa que desplegó la JRCM tiene y podría tener el efecto de ocasionarle daños irreparables; (2) la multa la expone a daños sustanciales a su reputación profesional, incluyendo el riesgo de ser sancionada por la JDLM; y (3) la expone, a

su vez, a que la propia JRCM le revoque su certificación para recomendar cannabis medicinal. Por último, recalcó que no venía obligada a agotar remedios administrativos ante la JRCM.

Así las cosas, el 21 de junio de 2019, el Tribunal de Primera Instancia emitió una *Sentencia* mediante la cual declaró con lugar la *Demanda* instada por la recurrida y dictó sentencia declaratoria. Determinó que la JLDM es la entidad con el peritaje requerido para regular lo concerniente a la práctica de la telemedicina en Puerto Rico. Además, concluyó que la JRCM se excedió en sus facultades al imponer la multa a la doctora Moreno Ferrer y, declaró nulo el Art. 10(D) del Reglamento Núm. 9038 por contravenir las disposiciones de la Ley Núm. 168-2018.

Inconforme, la JRCM recurrió al Tribunal de Apelaciones mediante una *Apelación*. A través del recurso argumentó que la doctora Moreno Ferrer estaba obligada a agotar los remedios administrativos disponibles para canalizar su reclamo en contra de la imposición de la multa administrativa. Asimismo, señaló que el foro primario incidió al determinar que la JRCM usurpó la facultad de la JLDM de reglamentar la telemedicina al aprobar el Art. 10(D) del Reglamento Núm. 9038.

Consecuentemente, el foro apelativo intermedio emitió una *Sentencia* en la cual confirmó el dictamen del foro primario. En síntesis, razonó que, obligar a la doctora

Moreno Ferrer a agotar el trámite administrativo antes de acudir en revisión judicial era un ejercicio fútil. Coligió que la peticionaria no contaba con el andamiaje apropiado para tramitar los reclamos de la recurrida; y que la controversia del caso de autos no requería la pericia de la agencia por tratarse de un asunto de estricto derecho. Por último, y establecida la jurisdicción del foro primario, confirmó el decreto de nulidad del Art. 10 (D) del Reglamento Núm. 9038 emitido por el foro de instancia.

Insatisfecha con la determinación, la JRCM acudió ante nos mediante recurso de *certiorari*. En esencia, solicitó que revoquemos el dictamen recurrido, toda vez que el Tribunal de Apelaciones incidió al confirmar la determinación del foro primario que eximió a la doctora Moreno Ferrer de agotar los remedios administrativos provistos en ley. De igual forma, señaló que erró al sostener que la JRCM usurpó la facultad de la JLDM de reglamentar la telemedicina al aprobar el Art. 10 (D) del Reglamento Núm. 9038.

Expedido el auto de *certiorari* y con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

**II**

**A.**

La Sección 4.2 de la Ley Núm. 38-2017, 3 LPRA sec. 9672, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), recoge lo siguiente:

**Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo** correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia... (Énfasis suplido).

Como podemos observar, la citada disposición expone lo que se conoce como la doctrina de agotamiento de remedios administrativos. Dicha doctrina es, junto a la doctrina de jurisdicción primaria, una norma de autolimitación judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento apropiado. Su propósito principal es evitar una intervención judicial innecesaria y a destiempo que tienda a interferir con el cauce y desenlace normal del procedimiento administrativo. Véase, *Procuradora Paciente v. MCS,* 163 DPR 21 (2004); *Mun. de Caguas v. AT&T,* 154 DPR 401(2001); *Igartúa de la Rosa v. ADT*, 147 DPR 318(1998). De esta forma, la agencia administrativa puede: (1) desarrollar un historial completo del asunto; (2) utilizar el conocimiento especializado o *expertise* de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad; y (3) aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos. *AAA v. UIA*, 200 DPR 903 (2018); *Procuradora Paciente v. MCS*, supra.

Ahora bien, la doctrina de agotamiento de remedios administrativos aplica a aquellos casos en los cuales una parte que instó o tiene instada una acción ante una agencia administrativa, acude luego a un tribunal sin antes haber completado todo el trámite administrativo. Véase, *AAA v. UIA,* supra*; Colón Rivera v. ELA*, 189 DPR 1033 (2013); *Guzmán y otros v. E. L. A.,* 156 DPR 693(2002); *Mun. de Caguas v. AT & T*, supra. Es decir, "[e]l agotamiento de remedios presupone la existencia de un procedimiento administrativo que comenzó, o que debió haber comenzado, pero que no finalizó porque la parte concernida recurrió al foro judicial antes de que se completase el referido procedimiento administrativo". J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 4ta ed. rev., San Juan, Ed. SITUM, 2017, pág. 71.

No obstante, según hemos resuelto, la doctrina de agotamiento de remedios administrativos no debe ser soslayada, a menos que se configure alguna de las limitadas excepciones que bajo nuestro ordenamiento jurídico justifican preterir el trámite administrativo. Véase, *ORIL v. El Farmer, Inc.*, 204 DPR 229 (2020); *Igartúa de la Rosa v. ADT*, supra; *Guadalupe Pérez v. Saldaña Saldaña*, *Pres. U.P.R.*, supra. Así, la Sección 4.3 de la LPAU, 3 LPRA sec. 2173, establece que:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su

agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

En consideración a las alegaciones realizadas en este caso, nos corresponde enfocarnos en algunas de las excepciones al requisito de agotamiento de remedios. Así, en cuanto a la excepción sobre que sea un "remedio inadecuado" y la "dilación en los procedimientos", hemos indicado que resulta impráctico que un demandante recurra ante un proceso y se vea obligado a agotar remedios administrativos ante la inacción de una agencia para hacer cumplir sus requerimientos. *Asociación de Pescadores v. Marina de Puerto del Rey*, 155 DPR 906 (2001). De igual forma, hemos expresado que el que un remedio administrativo sea lento no debe considerarse justificación para prescindir del requisito de agotamiento, pues se requiere, además, que el trámite administrativo resulte una gestión inútil o que permita un daño irreparable. *S.L.G. Flores Jiménez v. Colberg,* 173 DPR 843(2008*); Guadalupe v. Saldaña, Pres. U.P.R*, supra. Así, el concepto "inútil" "[…] se encuentra subordinado al hecho de que se demoren los procedimientos administrativos" Véase, D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3era ed., Bogotá, Ed. Forum, 2013, pág. 630.

Igualmente, hemos dispuesto que le corresponde a la parte demandante probar con hechos específicos y bien definidos la necesidad de obviar el cauce administrativo. *Procuradora Paciente v. MCS*, supra; *Guadalupe Pérez v. Saldaña*, *Pres. U.P.R.*, supra. No debemos olvidar que cuando "el agravio sea uno de 'patente intensidad al derecho del individuo que reclame urgente reparación', se puede utilizar el *injunction* para eludir el cauce administrativo". *S.L.G. Flores Jiménez v. Colberg*, supra, pág. 852.

Por último, en cuanto a la excepción relativa a cuando es un "asunto estrictamente de derecho" no significa que, de forma automática, se tenga que eximir a la parte del cauce administrativo. "Existen asuntos 'estrictamente de derecho' en los que resulte conveniente la evaluación del derecho que aplica por parte de las agencias administrativas, pues éstas poseen un conocimiento especializado, no solamente en asuntos fácticos, sino también en asuntos de derecho". Echevarría Vargas, *op. cit.,* pág. 74. En fin, las agencias administrativas manejan un estatuto habilitador que ha sido aprobado por el legislador para establecer una política pública y aplicar disposiciones legales a un campo de alta especialización. Véase, D. Fernández Quiñones, *op. cit.,* pág. 627. Sin duda, "[e]llo necesita para su más amplia y detallada concreción del peritaje administrativo. De lo que se trata es del predicamento que da vida y existencia al ente administrativo." Íd.

**B.**

El 9 de julio de 2017, la Asamblea Legislativa aprobó la Ley Núm. 42-2017, 24 LPRA sec. 2621 *et seq.*, conocida como *Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites*. Esta ley creó un amplio marco regulatorio a los fines de permitir el tratamiento con cannabis para las personas con ciertas condiciones médicas. Ante ello, la Ley destaca que el consumo de cannabis deberá ser recomendado por un médico cualificado, y como parte de una relación médico-paciente *bona fide*. Íd.

En aras de velar por el cumplimiento de la Ley Núm. 42-2017, su Art. 4 dispone para la creación de la Junta Reglamentadora del Cannabis Medicinal. Consecuentemente, el Art. 5 establece los poderes y obligaciones que poseerá la referida junta, a saber:

> **[…] gozará de todos los poderes necesarios o convenientes para llevar a cabo y realizar los propósitos y disposiciones de esta Ley, incluyendo, pero sin limitar la generalidad de lo que antecede, las facultades de:**
>
> […]
>
> k. Emitir reglamentos para instrumentar esta Ley conforme a la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme".
> **l. Celebrar vistas públicas conforme a su función adjudicativa. Adjudicar casos de asuntos bajo su jurisdicción cuando así lo requiera la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme"; y/o el debido proceso de ley.**

m. Realizar inspecciones a los tenedores de licencias.
**n. Emitir, negar, revocar, suspender, restringir licencias e imponer multas administrativas conforme a las disposiciones de esta Ley y los reglamentos que promulgue para instrumentar la misma.**
[…]
p. Cualquier otro poder que sea necesario para lograr los propósitos de esta Ley. (Énfasis nuestro).

Por último, a los fines de ejecutar la política pública promovida por la Ley Núm. 42-2017, se creó el Reglamento Núm. 9038, conocido como el *Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites*. En el Capítulo XXVI del mismo, cuyo título es *Vistas Administrativas*, el Art. 130 establece su autoridad sobre las vistas administrativas. De igual forma, en su Art. 131, sobre quienes tienen derecho a una vista administrativa, establece lo siguiente:

**Se le podrá conceder una vista administrativa a solicitud de cualquier persona contra quien se contempla una acción por violación a la Ley Núm. 42-2017 o a este Reglamento y a toda persona perjudicada por la concesión, denegación, revocación, o suspensión de una solicitud o licencia.** Cuando un registrado solicite la celebración de una vista solicitando revisión de una determinación de imposición de multa administrativa, el termino de quince (15) días concedido para el pago de la multa quedara suspendido y se reanudara a partir de la fecha de notificación de la Resolución final que emita el Departamento, si es que la misma confirma o sostiene la determinación de la Junta de imponer la multa al registrado. (Énfasis nuestro).

Asimismo, en el Art. 134 del estatuto se dispone que la vista se celebrará en el sitio, fecha y hora indicados en la citación a vista administrativa; y que deberá iniciarse

dentro de los treinta (30) días contados a partir de la notificación. Finalmente, en su Art. 141, sobre los procedimientos de la Vista, señala que una vez sometido el caso debe ser resuelto dentro de un término de seis (6) meses desde su radicación, salvo en circunstancias excepcionales.

Conforme a la normativa jurídica antes expuesta, pasamos a resolver la controversia ante nos.

## III

La JRCM aduce, en lo aquí pertinente, que el foro apelativo intermedio erró al sostener que la doctora Moreno Ferrer estaba exenta de agotar el trámite administrativo al acoger el argumento de que la peticionaria carecía de recursos y de un "andamiaje apropiado" para atender el caso mediante el proceso adjudicativo establecido a tales fines en la LPAU.

Por su lado, la doctora Moreno Ferrer señala que: (1) el proceso administrativo constituye un esfuerzo fútil ya que, a la fecha de los hechos, la JRCM no poseía el andamiaje ni el personal correspondiente para procesar multas administrativas; (2) la conducta arbitraria y caprichosa que desplegó la JRCM tiene y podría tener el efecto de ocasionarle daños irreparables de patente intensidad, ya que la multa impuesta la expone a daños sustanciales a su reputación profesional, incluyendo el riesgo de ser sancionada por la JDLM y la revocación por la JRCM de su

certificación; y (3) la controversia es estrictamente jurídica.

De entrada, debemos examinar el planteamiento jurisdiccional, a saber, si la doctora Moreno Ferrer tenía que agotar el cauce administrativo antes de recurrir al foro judicial. Así, debemos determinar si el caso ante nos presenta excepción alguna por la cual la recurrida podría prescindir de agotar los remedios administrativos ante la JRCM. Veamos.

Como arriba expusimos, mediante la promulgación de la Ley Núm. 42-2018, la Asamblea Legislativa le confirió a la JRCM una amplia facultad para promulgar, en esencia, reglamentos como, también, para **celebrar vistas administrativas** cuando así lo requiera la LPAU. Asimismo, autorizó a la peticionaria a imponer multas administrativas a quienes infringieran las disposiciones de ese estatuto y de los reglamentos que se adoptaran a raíz de este.

En el presente caso, la JRCM le notificó a la doctora Moreno Ferrer la imposición de una multa administrativa de $5,000.00 por su alegado incumplimiento con las disposiciones del Art. 10 (D) de su Reglamento Núm. 9038. Cabe destacar que, en la referida notificación, la peticionaria le apercibió a la recurrida sobre (1) el término que tenía para pagar la multa impuesta; y (2) el derecho que

tenía para solicitar una vista administrativa en la cual pudiera defenderse de lo imputado.[1]

Empero, la doctora Moreno Ferrer optó por incoar un recurso ante el foro de instancia para cuestionar la acción de la peticionaria, en la cual planteó la nulidad del articulado por cuyo incumplimiento se le impuso la multa administrativa en controversia. Colegimos que la doctora Moreno Ferrer no estableció hechos específicos y bien definidos que justifiquen preterir el trámite administrativo. La recurrida pretendió que el foro primario revisara -a destiempo- la actuación administrativa, sin que prosiguiera el cause administrativo correspondiente. *Nos explicamos.*

Como expusiéramos, la doctora Moreno Ferrer adujo en todo momento que no venía obligada a seguir el cauce administrativo ya que: (1) constituiría una gestión inefectiva; (2) conllevaría un daño irreparable; y (3) la controversia era estrictamente de derecho.

Primero, en cuanto a la gestión inefectiva, la recurrida alegó que, al momento de los hechos, la JRCM no poseía el andamiaje ni el personal correspondiente -los oficiales examinadores- para procesar las multas administrativas impuesta bajo su ley habilitadora. De una mirada al expediente, se desprende que tanto el Tribunal de

---

[1] Véase, el Art. 142 del Reglamento Núm. 9038 sobre la resolución final emitida luego de celebrada una vista administrativa; y el proceso de reconsideración ante la agencia o la revisión judicial ante el Tribunal de Apelaciones.

Apelaciones como la doctora Moreno Ferrer basaron su conclusión en un informe de operaciones que la JRCM remitió a la Asamblea Legislativa, allá para el 2018. Somos del criterio que ese informe no es suficiente como para determinar -de forma concluyente- que la peticionaria no contaba con un andamiaje efectivo para atender los reclamos de las personas sujetas a su jurisdicción.

Debemos tener presente que, tal cual lo alega la peticionaria, las operaciones gubernamentales estuvieron sustancialmente interrumpidas durante el primer semestre del año 2017 debido al paso de los huracanes Irma y María por nuestra Isla. Entendemos que el Tribunal de Apelaciones ni la recurrida tomaron en consideración el contexto y las circunstancias particulares que afectaron adversamente las operaciones de la JRCM, y en las entidades públicas en general, durante tan irregular periodo. De igual forma, no nos persuade la contención sobre que el referido informe no hace alusión a la celebración de vistas administrativas por parte de la JRCM. Este hecho, por sí solo, no es suficiente como para concluir que la agencia no contaba con un andamiaje ni con oficiales examinadores. Adviértase, que la multa aquí en controversia fue impuesta por la JRCM para el año 2019, año que no estaba comprendido en el informe en cuestión.

Ahora bien, cabe destacar que **no** surge del expediente que la recurrida haya presentado alguna otra evidencia o informe sobre el funcionamiento de la JRCM para el año fiscal

2018-2019. Esto resulta de suma importancia, ya que como hemos expuesto, fue para el año 2019 cuando la aquí recurrida recibió la multa en controversia. De esta forma, la doctora Moreno Ferrer venía obligada a probar al foro de instancia la falta de andamiaje de la peticionaria para el año 2019. Es decir, para el periodo de tiempo que comprendía la fecha de la multa y el momento cuando debió utilizar el cauce administrativo ante la JRCM. No lo hizo. Tampoco nos convence la contención del foro apelativo intermedio en cuanto a que no surge de la proyección presupuestaria para el año fiscal 2018-2019, asuntos relacionados al manejo de vistas administrativas o la designación del personal necesario. Ciertamente, esa información no surge. Empero, aclaramos que el referido documento es solo una hoja de presupuesto que contiene una proyección de las partidas monetarias para el año fiscal para el cual se realizó.

Somos de la opinión que las alegaciones de la doctora Moreno Ferrer resultan insuficientes para que los foros hermanos la eximieran de agotar el cause administrativo mediante la referida excepción. La recurrida no estableció con hechos específicos y bien definidos que el procedimiento administrativo fuera inútil o inefectivo. Al contrario, la recurrida se ha limitado a alegar de forma general y conclusoria la falta de andamiaje por parte de la peticionaria basada en un informe redactado allá para el 2018. **Como vemos, la doctora Moreno Ferrer no logró demostrar**

**que, para el momento que le impusieron la multa, no existía una estructura administrativa capaz de canalizar los reclamos contra las sanciones impuestas por la propia JRCM.**

Más aún, y como hemos recalcado, la multa impuesta a la recurrida fue para el año 2019 y, del expediente surge, que: (1) para ese año fiscal se había proyectado un presupuesto mayor para la operación general de la JRCM; y (2) el representante legal de la recurrida había presentado -para el mismo tiempo- una solicitud de vista administrativa ante la JRCM para otro caso similar para el cual ostentaba la representación legal. Entonces, de un estudio integral del expediente, es razonable colegir que, la JRCM se encontraba en funcionamiento y procesando las multas administrativas para el año 2019.[2]

No obstante, si la preocupación de la parte recurrida y del foro hermano iba dirigida a la diligencia o demora en el proceso adjudicativo -lo cual resulta especulativo- la recurrida no hubiese quedado desprovista de un remedio contra tal situación. "Cualquier dilación indebida o injustificada que torne inefectivo el mismo

---

[2] Este Tribunal ha expresado en el pasado que los expedientes judiciales son fuentes de confiable exactitud. Ante ello, sobre el funcionamiento de la JRCM y las vistas administrativas, se toma conocimiento judicial de los casos: *Red Cannagricola de Puerto Rico, Inc. v. Departamento De Salud De Puerto Rico y otros*, SJ2018CV10818; y *Fundación Free Juana v. Junta Reglamentadora De Cannabis Medicinal y otros*, SJ2019CV10625. Se desprende de los escritos de los referidos casos, el hecho de que se estaban calendarizando y/o llevando a cabo vistas administrativas para el año 2019. Específicamente, surgen procesos administrativos antes y después de la multa aquí impuesta. De igual forma, así surge de las Sentencias dictadas por el Tribunal de Apelaciones en los referidos casos.

podrá entonces encontrar reparo en el ámbito judicial". *Mercado Vega v. UPR*, supra. De igual forma, hemos resuelto que, una vez sometido el caso a la agencia administrativa, y pendiente su adjudicación, la parte que alegue que una agencia ha incurrido en demoras injustificadas tiene a su alcance la presentación del recurso de *mandamus* ante el foro intermedio apelativo para obligar al ente administrativo a finalizar los procesos. *Rivera Sierra v. Supte. Anexo 500 Guayama*, 179 DPR 98 (2010).

Segundo, en lo que respecta a que conllevaría un daño irreparable, la recurrida esgrimió que la multa impuesta la expone a daños sustanciales a su reputación profesional, incluyendo el riesgo de ser sancionada por la JDLM y la revocación por la JRCM de su certificación. En reiteradas ocasiones hemos resuelto que, para preterir el agotar remedios administrativos la violación debe ser de tal magnitud y debe constituir un agravio tan intenso que justifique el desviarse del cauce administrativo. Tal y como lo alega la peticionaria, no hay nada en el expediente en el sentido de que, luego de la imposición de la referida multa, su patrono le despidiera o le negara empleo. Mucho menos que haya perdido su práctica como doctora en medicina o que la JLDM u otro organismo tomara o haya tomado acción alguna en su contra. La doctora Moreno Ferrer no esgrimió hechos concretos o específicos que fundamentaran su alegación de que el trámite administrativo habría de causarle un daño

irreparable o inminente. Según hemos resuelto, las alegaciones hay que sustentarlas con prueba adecuada. Meras alegaciones no son suficientes, así como tampoco las conjeturas.

Tercero, en cuanto a que la controversia es de estricto derecho, la JRCM es el ente responsable de velar y ejecutar la política pública promovida por la Ley Núm. 42-2017. Colegimos, que por lo delicado que resulta el establecer el esquema regulatorio necesario para asegurar que el uso del cannabis sea únicamente para propósitos medicinales, resulta conveniente que sea la peticionaria, por su conocimiento especializado, la que realice -en este caso- la evaluación tanto en asuntos fácticos, como también en los asuntos de derecho. Con esto reiteramos la máxima de que la interpretación de una disposición por el organismo facultado por ley para administrarlo y darle cumplimiento, merecen respeto y deferencia judicial.

Como bien nos explica la JRCM, aquí no existía una situación de urgencia que ameritara la preterición del cauce administrativo. Nada impedía que la doctora Moreno Ferrer, una vez se llevara a cabo la vista administrativa, y de estar inconforme con la determinación final, procediera a recurrir ante el Tribunal de Apelaciones. Así, la recurrida podía levantar ante el foro apelativo intermedio todos los argumentos que tuviese en contra de tal dictamen, **incluyendo** la alegada nulidad del Art. 10 (D) del Reglamento Núm. 9038.

Véase, *Fuentes Bonilla v. ELA*, 200 DPR 364 (2018) (En donde resolvimos que, al considerar un recurso de revisión judicial, el Tribunal de Apelaciones tiene jurisdicción y competencia para examinar la validez de un reglamento que fue aplicado por la agencia recurrida en la determinación que se cuestiona a través del recurso). **En definitiva, ese era el cauce correcto que debió seguir la doctora Moreno Ferrer para ventilar su controversia en cuanto a la multa administrativa impuesta y las demás defensas que entendiera pertinentes.**

En fin, tanto el Tribunal de Apelaciones como el Tribunal de Primera Instancia erraron al dar paso a la improcedente acción instada por la doctora Moreno Ferrer para solicitar a destiempo la revisión judicial de un dictamen administrativo sin que se cumpliera con excepción alguna por la cual la recurrida podría prescindir de agotar los remedios administrativos ante la JRCM. Determinar lo contrario derrotaría los propósitos de la doctrina del agotamiento de remedios administrativos y promovería una intervención judicial innecesaria y a destiempo. Aquí, y como hemos expuesto, la doctora Moreno Ferrer no queda desprovista de remedio alguno. Una vez finalicen los procedimientos ante la peticionaria, esta podrá presentar los planteamientos que entienda pertinentes ante el foro judicial como parte de la revisión de la resolución final que en su día emita la JRCM.

Resuelto lo anterior, no procede discutir el segundo señalamiento de error de la JRCM, ya que la desestimación del recurso por falta de agotamiento de remedios administrativos dispone totalmente de la controversia.

**IV**

Por los fundamentos esbozados, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones, como la emitida por el Tribunal de Primera Instancia. En consecuencia, se desestima la *Demanda* presentada por la doctora Moreno Ferrer.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez, el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez emitieron Opiniones Disidentes por separado.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Dra. Liana Moreno Ferrer

    Recurrida

       v.                        CC-2020-0192

Junta Reglamentadora del
Cannabis Medicinal

    Peticionaria

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión disidente

En San Juan, Puerto Rico, a 20 de mayo de 2022.

Disiento del proceder mayoritario. Considero que la Dra. Liana Moreno Ferrer (doctora Moreno Ferrer) no tiene que agotar los remedios administrativos para impugnar la multa que se le impuso por, alegadamente, incumplir con el Art. 10(D) del "Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites", Reglamento Núm. 9038 de 2 de julio de 2018, (Reglamento Núm. 9038). La controversia que planteó la doctora ante el Tribunal de Primera Instancia es que esa disposición es nula por constituir una actuación *ultra vires* por parte de la agencia administrativa. Esto es un asunto de estricto derecho que el tribunal está plenamente facultado para atender. No es necesaria

la pericia de la agencia. De igual forma, se trata de la impugnación de un reglamento en su aplicación, por lo que, sin duda no era necesario agotar remedios administrativos.

## I

La doctora Moreno Ferrer está licenciada para practicar la medicina en Puerto Rico. Asimismo, está autorizada a emitir recomendaciones clínicas para el uso de cannabis medicinal de conformidad con el Reglamento Núm. 9038 y la *Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites*, Ley Núm. 42-2017, 24 LPRA sec. 2621, et. seq. (Ley Núm. 42-2017).

El 6 de abril de 2019 una Inspectora de la Junta Reglamentadora de Cannabis Medicinal (JRCM) llamó a Island Med —empresa con la cual la doctora Moreno Ferrer tiene una relación profesional— haciéndose pasar como una paciente. Ello, con el propósito de recibir orientación sobre el proceso para obtener una licencia de paciente de cannabis medicinal. Ante preguntas protocolares, la Inspectora declaró que no tenía un diagnóstico oficial, pero que sufría de ansiedad, depresión, dolores musculares e insomnio. Luego de recopilar más información, la Inspectora pagó el diligenciamiento de licencia de pacientes de cannabis medicinal para continuar con los procedimientos de obtención de la licencia de uso.

Ese mismo día, la doctora Moreno Ferrer se comunicó vía telefónica con la Inspectora para realizar la evaluación médica correspondiente. De esta manera, la galena confirmó los datos personales que la Inspectora proveyó con

anterioridad y, luego de una conversación sobre sus padecimientos, le notificó que procedería a emitir una recomendación médica. Así, el 15 de abril de 2019 se le notificó a la Inspectora que la evaluación médica había finalizado.

Culminados los procedimientos médicos, el 1 de mayo de 2019 la JRCM le notificó a la doctora Moreno Ferrer una "Notificación de Infracción". En esta, le impuso una multa de cinco mil dólares ($5,000.00) por dar una recomendación médica utilizando el método de llamada telefónica. Ello, en contravención al Art. 10(D) del Reglamento Núm. 9038 que obliga a los facultativos médicos que decidan evaluar a los pacientes mediante el mecanismo de la telemedicina a utilizar el método audiovisual. Asimismo, la JRCM le apercibió a la doctora Moreno Ferrer de su derecho a impugnar la multa impuesta.

Así las cosas, la doctora Moreno Ferrer presentó en el Tribunal de Primera Instancia una demanda sobre sentencia declaratoria e interdicto preliminar y permanente. Arguyó que la JRCM carece de autoridad para reglamentar la práctica de la telemedicina en Puerto Rico. Sostuvo que la JRCM se arrogó los poderes que le fueron delegados a la Junta de Licenciamiento y Disciplina Médica (JLDM) en virtud de la *Ley para el uso de la telemedicina en Puerto Rico*, Ley Núm. 168-2018 (Ley 168-2018). Expuso que la Asamblea Legislativa le delegó la reglamentación de la telemedicina a la JLDM, por lo

que el Art. 10(D) del Reglamento Núm. 9038 constituye una limitación irrazonable al ejercicio de la telemedicina.

El foro primario le ordenó a la doctora Moreno Ferrer que mostrara causa por la cual no debía desestimarse su causa de acción al amparo de la doctrina de agotamiento de remedios administrativos. De conformidad, la doctora Moreno Ferrer presentó una *Moción en Cumplimiento de Orden* en la que argumentó que la controversia es susceptible de ser adjudicada sin la necesidad de acudir al foro administrativo porque se trataba de un asunto de estricto derecho, a saber: si la JRCM posee la potestad de regular la práctica de la telemedicina, o si tal función recae exclusivamente en la JLDM. Además, alegó que no debía ser requisito agotar los remedios administrativos porque la JRCM no tenía oficiales examinadores que puedan celebrar vistas administrativas.

Por su parte, la JRCM presentó una moción de desestimación en la que alegó que la doctora Moreno Ferrer tenía que agotar los remedios administrativos para impugnar la multa por incumplimiento con el Art. 10(D) del Reglamento Núm. 9038. Arguyó que no existía un escenario de incertidumbre jurídica que ameritara la intervención del tribunal en esta etapa. En respuesta, la doctora Moreno Ferrer presentó una *Oposición a Moción en Solicitud de Desestimación* donde reprodujo los argumentos que presentó anteriormente.

Así las cosas, se celebró una vista a la cual comparecieron ambas partes y la Asociación de los Miembros

del Cannabis Medicinal de Puerto Rico ("MiCaM").[1] Luego de algunos trámites procesales, el foro primario emitió una *Sentencia* mediante la cual declaró nulo el Art. 10(D) del Reglamento Núm. 9038. Expuso que la JLDM es la entidad con peritaje para regular lo concerniente a la práctica de la telemedicina en Puerto Rico. En vista de ello, concluyó que la JRCM se excedió en sus facultades al imponer una multa con relación a los métodos que utilizó la doctora Moreno Ferrer.

Inconforme con el resultado, la JRCM recurrió al Tribunal de Apelaciones. El foro intermedio confirmó la sentencia recurrida. Resolvió que la doctora Moreno Ferrer podía acudir al foro primario por medio de un interdicto y una sentencia declaratoria, sin tener que agotar remedios administrativos, pues la controversia estaba relacionada con la impugnación de la aplicación de un reglamento. Además, determinó que la JRCM no cuenta con un andamiaje efectivo para atender los reclamos de las personas sujetas a su jurisdicción. Expuso que, aun si se entendiera que la JRCM cuenta con un andamiaje apropiado, acudir al foro administrativo habría sido fútil porque la controversia versa sobre un asunto de estricto derecho e interpretación jurídica sobre la Ley 42-2017 y la Ley 168-2018.

Aún insatisfecha, la JRCM recurre ante nos. Arguye que el foro intermedió erró al sostener el decreto de nulidad del Art. 10(D) del Reglamento Núm. 9038 tras concluir que la JRCM

---

[1] MiCaM solicitó intervenir en el pleito. El foro primario permitió su intervención.

usurpó las facultades de la JLDM. Además, argumentó que los foros inferiores erraron al determinar que la doctora Moreno Ferrer no tenía que agotar los remedios administrativos porque la agencia careciera de un andamiaje apropiado para llevar a cabo los procesos requeridos en la impugnación la multa.

Tras analizar la controversia, una mayoría de este Tribunal concluyó que para impugnar la aplicación de un reglamento la doctora Moreno Ferrer tenía que agotar los remedios administrativos. Difiero.

**II**

**A.**

La doctrina de agotamiento de remedios administrativos es "una norma de abstención judicial". <u>Asociación de Pescadores de Punta Figueras, Inc. v. Marina de Puerto del Rey, Inc.,</u> 155 DPR 906, 916 (2001); <u>Igartúa de la Rosa v. A.D.T.,</u> 147 DPR 318 (1998). En esencia, esta doctrina establece la etapa en que un tribunal de justicia debe intervenir en una controversia que se ha presentado inicialmente ante un foro administrativo. <u>S.L.G. Flores v. Colberg,</u> 173 DPR 843, 851 (2008). Entiéndase, la doctrina de agotamiento de remedios administrativos responde a la pregunta de cuál es el momento adecuado para que el tribunal intervenga en un asunto administrativo. <u>Vélez Ramírez v. Romero Barceló,</u> 112 DPR 716, 722 (1982); <u>ELA v. 12974.78. Metros Cuadrados,</u> 90 DPR 506 (1964). La doctrina pretende evitar que se presente un recurso ante los tribunales sin que

la agencia administrativa haya tomado una determinación final en el asunto. Hernández, Romero v. Pol. de P.R., 177 DPR 121, 136 (2009). Así, de ordinario, "el foro judicial debe abstenerse hasta que concluyan los trámites administrativos". Asociación de Pescadores de Punta Figueras, Inc. v. Marina de Puerto del Rey, Inc., supra, pág. 916.

No obstante, hemos validado que existen múltiples factores para preterir el cauce administrativo, pues la exigencia de agotamiento de remedios no es un principio de aplicación inexorable. Este Tribunal ha reconocido que uno de esos factores es cuando "el asunto es estrictamente de derecho". Oficina para Reglamentación de la Industria Lechera v. El Farmer, Inc., 204 DPR 229, 240 (2020). En particular, la sección 4.3 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), dispone que:

> [e]l tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, **o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa**.(Énfasis suplido). 3 LPRA sec. 9673.

### B.

Un reglamento administrativo se puede impugnar, esencialmente, de dos formas: mediante impugnación de su faz

o por impugnación en su aplicación. La impugnación por aplicación permite "que personas a quienes se les aplique un reglamento, luego de transcurrido [el término para impugnarlo de su faz], puedan impugnar, por ejemplo, la validez o constitucionalidad de [e]ste". Asoc. Dueños Casas Parguera, Inc. v. J.P., 148 DPR 307, 315 esc. 4 (1999).

Así, hemos resuelto que cualquier persona que sufra la aplicación de un reglamento administrativo puede impugnar su validez ante el foro primario en cualquier momento, amparado en nuestra constitución o en otro motivo de conformidad con el derecho vigente. Centro Unido Detallistas v. Com. Serv. Pub., 174 DPR 174, 184-185 (2008).[2] Por ende, la acción de impugnación reglamentaria provista por la LPAU es distinta de cualquier proceso que pueda entablar un ciudadano agraviado por la acción de una agencia, bien tras un procedimiento de adjudicación o a raíz de la aplicación de un reglamento que, a su entender, carezca de validez. Íd.

A este tipo de revisión sobre la validez de los reglamentos administrativos se le conoce como la revisión colateral. Íd. Entiéndase, las personas afectadas por la aplicación de dichos reglamentos pueden presentar pleitos particulares para cuestionar las actuaciones de la agencia. Íd. El mecanismo adecuado para impugnar la aplicación de un

---

[2] Las disposiciones que este Tribunal interpretó en Centro Unido Detallistas v. Com. Serv. Pub., 174 DPR 174 (2008), a la luz de la Ley Núm. 170 de 12 de agosto de 1988 son equivalentes a la actual Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017.

reglamento es la sentencia declaratoria.[3] Junta de Planificación v. Frente Unido I, 165 DPR 445, 463 (2005); D. Fernández Quiñones, *La revisión judicial de las decisiones administrativas*, 69 Rev. Jur. UPR 1129, 1147-1148 (2000). Así, de ordinario, cuando se pretende cuestionar la validez y la autoridad de una actuación de una agencia, no es necesario agotar los remedios administrativos, pues estamos ante un asunto de estricto derecho. Oficina para Reglamentación de la Industria Lechera v. El Farmer, Inc., supra.

### c.

La Asamblea Legislativa aprobó la Ley 42-2017, supra con el propósito de regular el uso del cannabis medicinal en Puerto Rico. En virtud de esa legislación se legalizó en Puerto Rico el consumo de cannabis cuando este fuera recomendado por un médico cualificado en una relación médico-paciente *bona fide.* En lo pertinente es necesario destacar que la Ley 42-2017, supra, no establece criterios sobre cómo deben ser las consultas médicas para expedir la recomendación médica para el uso de cannabis. Fue mediante el Reglamento Núm. 9038, conocido como el *Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites* que la JRCM dispuso

---

[3] Este Tribunal ha manifestado que "[e]sas acciones [judiciales de impugnación] normalmente están relacionadas con intentos concretos de aplicar la regla impugnada. Por eso, en la práctica, el interdicto, la sentencia declaratoria y el propio procedimiento para hacer cumplir la resolución de la agencia son los mecanismos más utilizados al revisar la validez de las reglas administrativas". Centro Unido Detallistas v. Com. Serv. Pub., 174 DPR 174, 185 (2008).

los métodos que podían utilizarse al proveer el servicio de telemedicina con relación a los certificados de cannabis medicinal. En particular, el artículo 10(D) establece que:

> El servicio de la telemedicina se utilizará en cumplimiento con todas las leyes y reglamentos, estatales y federales, referente a la práctica de la misma. No obstante, para propósitos de este Reglamento, el servicio de telemedicina tendrá que realizarse mediante el método audiovisual entre el médico autorizado y el paciente. **No se permitirá el servicio de telemedicina mediante llamadas telefónicas o cualquier otro método que no sea de manera audiovisual.** (Énfasis suplido).

Ahora bien, un año después de promulgar la Ley 42-2017, supra, la Asamblea Legislativa aprobó la Ley 168-2018, supra, con el propósito de "promover, facilitar e incorporar en nuestra jurisdicción los avances tecnológicos en la práctica médica". 20 LPRA sec. 6011b. De acuerdo con ese propósito, se le delegó a la JLDM la facultad para:

> [I]mplantar las reglas y reglamentos necesarios para dar cumplimiento a las disposiciones de esta Ley o que sean necesarios por la Práctica de la Telemedicina en Puerto Rico. **Al reglamentar todos los asuntos relacionados a la telemedicina** deberá considerar, sin que represente una limitación a su facultad de reglamentar la materia, los comentarios, sugerencias y recomendaciones de la academia y los gremios y asociaciones que representen a los médicos y proveedores de salud. 20 LPRA sec. 6011k. (Énfasis suplido).

## III

La JRCM alega que la doctora Moreno Ferrer no podía acudir al foro judicial para impugnar la aplicación de la multa sin agotar los remedios administrativos debido a que la

controversia que planteó la demandante no es de estricto derecho.

La doctora Moreno Ferrer cuestionó ante el Tribunal de Primera Instancia la validez del Art. 10(D) del Reglamento Núm. 9038 de la JRCM a la luz de los cambios estatutarios y reglamentarios en materia de telemedicina. En específico, cuestionó si la JRCM podía aplicarle el Art. 10(D) del Reglamento Núm. 9038, o si ello constituyó una actuación *ultra vires* de la agencia. En otras palabras, impugna la aplicación de un reglamento y plantea una controversia de derecho.

Como vimos, no es necesario agotar remedios administrativos cuando se impugna la facultad de una agencia administrativa para **aplicar** un reglamento. Esto es razonable toda vez que una agencia administrativa no es el ente adecuado para auscultar y determinar su propio alcance jurídico. Por eso, como norma general, son los foros judiciales quienes están facultados para evaluar y determinar si una agencia se extralimitó en sus facultades al aplicar un reglamento.

De acuerdo con lo expuesto, no era necesario agotar remedios administrativos, puesto que el tribunal tenía jurisdicción para evaluar el caso. Los foros recurridos lo analizaron correctamente.

Estimo, respetuosamente, que la Mayoría aplicó un análisis incorrecto para resolver la controversia. En primer lugar expuso que no se justificaba preterir el cauce administrativo toda vez que "aquí no existía una situación de urgencia que ameritara la preterición del cauce

administrativo."[4] La doctrina de agotamiento de remedios no descansa en la urgencia que tiene, o pueda tener, una de las partes para resolver un asunto. El estándar es si existe o no alguna de las excepciones de la sección 4.3 de la LPAU, supra. De haberlo hecho, este Tribunal hubiera concluido que las alegaciones de la doctora Moreno Ferrer son argumentos de estricto derecho.

En segundo lugar, la Sentencia expone que no se debe preterir el cause administrativo porque "conviene" que la JRCM supervise los asuntos relacionados al cannabis medicinal. Sin embargo, el asunto ante nuestra consideración es sobre la práctica de la telemedicina, no sobre "lo delicado que resulta el establecer [un] esquema regulatorio [. . .] para asegurar que el uso del cannabis sea únicamente para propósitos medicinales".[5]

La práctica de la telemedicina –como hemos visto en estos tiempos de COVID-19- es importante para promover y facilitar el acceso a la salud de todas las personas. Por eso, la Asamblea Legislativa, mediante la Ley 168-2018, supra, uniformó la práctica de la telemedicina en Puerto Rico.

Según mencioné, la Ley Núm. 42-2017, supra, que creó la JRCM, no contiene disposición alguna sobre los métodos a utilizarse para hacer una recomendación sobre el uso de cannabis medicinal. Tampoco existe una expresión con relación a la facultad de la JRCM para utilizar y/o, mucho menos,

---

[4] Véase, *Sentencia*, pág. 20.
[5] Véase, *Sentencia*, pág. 19.

reglamentar la telemedicina. Las disposiciones sobre telemedicina relacionadas al cannabis medicinal se incluyeron en el Reglamento Núm. 9038, que claramente se extralimitó en cuanto a las facultades concedidas. Ahora bien, luego de que se promulgara la Ley 42-2017, la Asamblea Legislativa aprobó la Ley 168-2018, supra, y reguló de manera amplia y **expresa** todo lo concerniente al uso de la telemedicina como método alterno para proveer acceso a los servicios médicos en Puerto Rico. Exposición de Motivos de la Ley 168-2018, supra. Específicamente, la ley le delegó a la JLDM -y no a la JRCM- la facultad para reglamentar **todos los asuntos relacionados a la telemedicina.** Se debe interpretar que al promulgar la Ley 168-2018, supra, la Asamblea Legislativa uniformó la práctica de la telemedicina en Puerto Rico y derogó tácitamente las disposiciones reglamentarias que le concedían a otras entidades la facultad para dirigir los servicios de telemedicina. Para llegar a esa conclusión no se necesita el peritaje de la agencia administrativa. Más bien, requería del ejercicio interpretativo de los foros judiciales. Al resolver lo contrario, la mayoría ignoró la voluntad legislativa de que fuese la JLDM el ente que reglamentara todo lo concerniente a la práctica de la telemedicina.

Por otro lado, y en apoyo a preterir el cause administrativo, el foro apelativo determinó -sin que se comprobara lo contrario- que la JRCM no cuenta con un andamiaje efectivo para atender los reclamos de las personas

a quienes se les aplica el Reglamento Núm. 9038. No cabe hablar de agotar remedios administrativos donde no los hay.

Finalmente, destaco que una mayoría se ampara en _Fuentes Bonilla v. ELA_, 200 DPR 364 (2018) para sostener que la doctora Moreno Ferrer debe agotar los trámites administrativos y _luego_ impugnar la validez de la reglamentación ante el Tribunal de Apelaciones. Si bien en _Fuentes Bonilla v. ELA_, supra, resolvimos que una parte adversamente afectada por una resolución final de un foro administrativo podía recurrir al Tribunal de Apelaciones para impugnar la reglamentación que se le aplicó, en este caso ello no sería práctico. Por el contrario, sería oneroso e incongruente que se le requiera a la parte que impugna los actos del foro administrativo completar los procesos ante ese ente previo a acudir en auxilio de un tribunal. Es un contrasentido requerirle a la parte que agote los procedimientos ante la agencia cuando lo que la parte expone es precisamente que la agencia actuó de manera _ultra vires._

En fin, por entender que la doctora Liana Moreno Ferrer no tenía que agotar los remedios administrativos, pues impugna la autoridad delegada a la JRCM, un asunto de estricto derecho, disiento respetuosamente de la Sentencia que hoy se emite.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Dra. Liana Moreno Ferrer<br><br>Recurrida<br><br>v.<br><br>Junta Reglamentadora del Cannabis Medicinal<br><br>Peticionaria | CC-2020-0192 | Certiorari |

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 20 de mayo de 2022.

> La doctrina del agotamiento de los remedios parece ser difícil de aplicar y entender por los tribunales. Todo parece indicar que existe una renuencia en admitir que las excepciones deben ser aplicadas en ciertos casos.[1]
>
> – Demetrio Fernández Quiñones

El Poder Judicial tiene la facultad y el deber de intervenir oportunamente cuando una agencia administrativa actúa sin base legal. Máxime, cuando permitir que un proceso legal nulo siga su curso tiene el efecto de vulnerar las garantías más elementales del acceso a los tribunales y a la justicia. Cuando una agencia administrativa incurre en tales prácticas, ya sea

---

[1] D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 3era ed., Bogotá, Ed. Forum, 2013, pág. 617.

intencional o negligentemente, la abstención judicial no puede ser la solución remedial.

No obstante, ello fue precisamente lo que ocurrió en este caso. De esta forma, hoy se añade un eslabón más a la extensa cadena de controversias que una Mayoría de este Tribunal no considera justiciables: la aplicación extremista del requerimiento de agotamiento de remedios administrativos. En consecuencia, hoy cierran las puertas de este Tribunal a una controversia que, por su propia naturaleza, hacía imperante preterir el cauce administrativo. Ello, pues, se trata de una controversia de estricto Derecho que no requiere de la pericia administrativa y son los foros judiciales los llamados a resolverla.

En este caso, la única controversia versa sobre si la norma reglamentaria impugnada es contraria al mandato legislativo. En específico, correspondía que determináramos cuál cuerpo normativo, entre la <u>Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites</u>, <u>infra</u>, o la <u>Ley para el Uso de la Telemedicina y la Telesalud en Puerto Rico</u>, <u>infra</u>, tiene primacía para reglamentar la telemedicina en Puerto Rico para la emisión de una recomendación médica autorizando el uso de cannabis medicinal.

Por estar ante una controversia puramente jurídica que requiere una interpretación en estricto Derecho sobre

la convergencia de ambas leyes, resultaba imprescindible que este Tribunal validara el preterir el agotamiento de remedios administrativos. Particularmente cuando continuar los procedimientos por la vía administrativa constituye una gestión inútil e inefectiva que no ofrece un remedio adecuado, pues son los tribunales los que tienen el rol de interpretar y pautar el Derecho.

Sin embargo, este Tribunal se niega a reconocer que, en este caso existen circunstancias extraordinarias que hacían inequívoca la intervención judicial. Al obviar esa realidad, no tan solo desestiman la demanda incoada en el 2019, sino que atentan contra el postulado de nuestro ordenamiento que propicia la economía procesal, el acceso a la justicia y la otorgación de un remedio completo, adecuado y oportuno.

Por estar en desacuerdo con ese curso de acción, procedo, entonces, a exponer los fundamentos en Derecho que orientan mi disenso.

**I**

**A.**

La sentencia declaratoria es un "mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita". Senado de PR v. ELA, 203 DPR 62, 71 (2019) (citando a Alcalde Guayama v. ELA, 192 DPR 329, 333 (2015)). Este recurso extraordinario, "es adecuad[o] para

declar derechos, estados y otras relaciones de naturaleza jurídica independiente[mente] a que existan otros remedios". Alcalde Guayama v. ELA, supra.

Asimismo, la sentencia declaratoria viabiliza que "toda persona […] cuyos derechos […] fuesen afectados por un estatuto, una ordenanza municipal, un contrato o una franquicia, [pueda] solicitar una [determinación] sobre cualquier divergencia en la interpretación o validez de [estos] y […] que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven". Regla 59.2(a) de Procedimiento Civil, 32 LPRA Ap. V.

A pesar de que la sentencia declaratoria no puede ser utilizada con el propósito de burlar la jurisdicción primaria exclusiva otorgada a una agencia ni con el fin de obviar que no se agoten los remedios administrativos, nada impide que se utilice en ausencia de estas circunstancias.[2]

Es decir, ante la falta de una designación específica de jurisdicción o de la exigencia de remedios administrativos que agotar, es perfectamente válido la utilización del mecanismo de injunction y la sentencia declaratoria en este tipo de controversias.[3]

---

[2]Fernández Quiñones, op. cit., págs. 747-748.

[3]Véase, Íd., págs. 746-747 (haciendo referencia a Asoc. Distribuidores v. Admón. Estabilización, 81 DPR 212, 219 (1959) (citas omitidas).

**B.**

Como es conocido, la doctrina de agotamiento de remedios administrativos, junto con la de jurisdicción primaria, constituyen normas de abstención judicial cuyo fin común es armonizar la labor adjudicativa de los foros administrativos y judiciales. Colón Rivera v. ELA, 189 DPR 1033, 1057 (2013); Procuradora Paciente v. MCS, 163 DPR 21, 35 (2004); Asoc. Pesc. Pta. Figueras. v. Pto del Rey, Inc., 155 DPR 906, 916 (2001).

Particularmente, la doctrina de agotamiento de remedios administrativos postula que el foro judicial debe abstenerse de intervenir en una controversia que se dilucida por la vía administrativa hasta tanto concluyan tales procedimientos, de manera tal que la determinación de la agencia represente su postura final. Colón Rivera v. ELA, supra; Asoc. Pesc. Pta. Figueras. v. Pto del Rey, supra. "Precisa que así sea, para que la agencia tenga ante sí todos los elementos del caso […] para poder ser considerad[o] por los tribunales". Asoc. Pesc. Pta. Figueras. v. Pto del Rey, supra.

Son múltiples los propósitos que propenden la doctrina de agotamiento de remedios administrativos. Este Tribunal ha reiterado que, entre otros beneficios, se encuentra: (1) que la agencia desarrolle un historial completo de la controversia previo a la intervención judicial; (2) que la institución pueda utilizar el conocimiento especializado para adoptar las medidas

correspondientes y aplicar uniformemente su política pública; (3) que el foro administrativo tenga la oportunidad de rectificar sus errores; (4) que los tribunales tengan información más precisa sobre los fundamentos de la actuación gubernamental y poder así tomar una decisión informada en el pleito, y (5) la distribución adecuada y eficiente de tareas entre los poderes judiciales y ejecutivos. AAA v. UIA, 200 DPR 903, 914 (2018); Procuradora Paciente v. MCS, supra; Guadalupe v. Saldaña, Pres. U.P.R., 133 DPR 42, 49 (1993); Rivera v. E.L.A., 121 DPR 582, 595 (1988).

Fundamentalmente, esta doctrina "se aplica en casos en los cuales una parte, que instó o tiene instada alguna acción ante una agencia u organismo administrativo, recurre a algún tribunal sin antes haber completado todo el trámite administrativo disponible".[4] Mun. de Caguas v. AT&T, 154 DPR 401, 408 (2001). En ese sentido, la norma de agotamientos "determina la etapa en la cual el litigante puede recurrir a los tribunales". E.L.A. v. 12,974.78 Metros Cuadrados, 90 DPR 506, 513 (1964).

Ahora bien, la determinación sobre la aplicabilidad de este precepto depende del balance entre los factores

---

[4]"Es decir, la doctrina usualmente se invoca para cuestionar la acción judicial de un litigante que originalmente acudió a un procedimiento administrativo **o era parte de éste**, pero habiendo estado allí, no agotó todos los recursos disponibles a su favor". (Negrillas y énfasis suplidos). (Énfasis en el original omitido). Ortiz v. Panel F. E. I., 155 DPR 219, 242 (2001).

que operan en favor y en contra de la revisión judicial de la decisión de la entidad. Guadalupe v. Saldaña, Pres. U.P.R., supra, pág. 51. Bajo este entendido, se han establecido, jurisprudencialmente y por la vía estatutaria, una serie de situaciones o factores en los que la balanza se inclina a favor de preterir el trámite administrativo. A saber, cuando:

> (1) [D]ar curso a la acción administrativa cause un daño inminente, material, sustancial y no teórico o especulativo; **(2) el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrezca un remedio adecuado;** (3) la agencia claramente no tenga jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado, o **(4) el asunto es estrictamente de derecho.** (Negrillas suplidas). ORIL v. El Farmer, Inc., 204 DPR 229, 240 (2020) (citas omitidas).

Por otro lado, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9601 et seq., contempla varios escenarios que justifican eximir del requisito de finalidad o del agotamiento de los remedios como condición para la intervención judicial. A esos efectos, dispone que:

> El tribunal podrá **relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado,** o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil

> agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o **cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.** (Negrillas suplidas). 3 LPRA sec. 9672.

En ausencia de alguna de estas circunstancias, el trámite administrativo debe continuar su cauce ordinario. Lo anterior, pues, usualmente las agencias "se consideran mejor equipadas que los tribunales debido a su especialización y al conocimiento obtenido a través de la experiencia". Ortiz v. Panel F.E.I., supra, 243. De este modo, una vez la agencia emite su determinación final, se activa el derecho de instar un recurso de revisión judicial ante los tribunales.

Dado lo anterior, la consideración de si existe alguna circunstancia que viabilice el acudir a los tribunales sin culminar el trámite administrativo no debe realizarse en el vacío, sino que debe estar sustentada en los fundamentos en que se apoya la propia doctrina. Veamos

## II

En el presente caso, la Junta Reglamentadora del Cannabis Medicinal emitió una multa administrativa en contra de la Dra. Liana Moreno Ferrer (doctora Moreno Ferrer) por una alegada infracción al Art. 10(D) del Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites, Reglamento Núm. 9038 de 2 de julio

de 2018 (Reglamento Núm. 9038). Se argumentó que la doctora Moreno Ferrer evaluó y autorizó a una paciente —quien en realidad era una inspectora— para el consumo de cannabis medicinal a través de una **llamada telefónica**, a pesar de que el reglamento precitado establece que tal evaluación debe ser realizada mediante un **método audiovisual**.

En desacuerdo, la doctora Moreno Ferrer presentó una demanda de injunction y sentencia declaratoria contra la Junta Reglamentadora del Cannabis Medicinal. En esta, arguyó que tal entidad carece de autoridad para reglamentar la práctica de la telemedicina en Puerto Rico. Explicó que, en virtud de la Ley para el Uso de la Telemedicina y la Telesalud en Puerto Rico, Ley Núm. 168-2018, LPRA, 20 LPRA sec. 6011 et seq. (Ley para el Uso de la Telemedicina), esta facultad le fue delegada exclusivamente a la Junta de Licenciamiento y Disciplina Médica. Por tanto, peticionó que la disposición en pugna fuera declarada nula por ser ultra vires y por constituir una limitación irrazonable al ejercicio de la telemedicina.

Asimismo, la doctora Moreno Ferrer argumentó que preterir el trámite administrativo era el único curso práctico, ya que, entre otros motivos, su reclamo versa sobre un asunto de estricto Derecho. Además, expuso que constituía un ejercicio fútil acudir a la Junta Reglamentadora del Cannabis Medicinal, pues ese organismo, al momento en que se suscitó la controversia, no contaba

tan siquiera con oficiales examinadores que pudieran celebrar vistas administrativas.

Por su parte, la Junta Reglamentadora del Cannabis Medicinal se opuso a que se concediera recurso extraordinario alguno. Expresó que actuó conforme a la Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites, Ley Núm. 42-2017, 24 LPRA sec. 2621 et seq. (Ley Medicinal) y su Reglamento Núm. 9038, supra. Además, solicitó la desestimación del recurso porque la doctora Moreno Ferrer debió agotar remedios administrativos previo a acudir a los tribunales.

Tras múltiples incidencias procesales, el Hon. Anthony Cuevas Ramos declaró con lugar la demanda instada por la doctora Moreno Ferrer y dictó sentencia declaratoria a su favor. Ello, al determinar que la Junta de Licenciamiento y Disciplina Médica es la entidad con el peritaje para regular lo concerniente a la práctica de la telemedicina en Puerto Rico. Por tanto, concluyó que la Junta Reglamentadora del Cannabis Medicinal excedió sus facultades al imponer la multa y declaró nulo el Art. 10(D) del Reglamento Núm. 9038, supra, por estar reñido con la Ley para el Uso de la Telemedicina, supra.

Inconforme, la Junta Reglamentadora del Cannabis Medicinal recurrió al Tribunal de Apelaciones y argumentó que el Tribunal de Primera Instancia erró al dictar sentencia sin que se hubieran agotado los remedios

administrativos y determinar que estos, con la aprobación del Art. 10(D) del Reglamento Núm. 9038, supra, usurparon la facultad de la Junta de Licenciamiento y Disciplina Médica de reglamentar la telemedicina en Puerto Rico.

Eventualmente, el foro apelativo intermedio confirmó la sentencia del tribunal recurrido. En lo pertinente, validó la impugnación del Reglamento Núm. 9038, supra, en su aplicación mediante el interdicto y la sentencia declaratoria. Justificó la falta de agotamiento de remedios administrativos en que, al examinar los informes fiscales del 2017 al 2018 —año que precede a la multa— y del 2018 al 2019 —periodo que cubre la fecha de la sanción— de la Junta Reglamentadora de Cannabis Medicinal, no se refleja asignación de fondos alguna para el trámite y manejo de vistas administrativas o la contratación de oficiales examinadores. Por lo tanto, concluyó que no se probó la existencia de una estructura administrativa capaz de canalizar los reclamos contra las sanciones impuestas por la Junta Reglamentadora del Cannabis Medicinal, por lo que continuar con el trámite administrativo hubiera constituido un ejercicio fútil insostenible.

Además, el Tribunal de Apelaciones sostuvo que el eje de la controversia giraba en torno a la interpretación y aplicabilidad de la Ley Medicinal, supra, y la Ley para el Uso de la Telemedicina, supra, una controversia puramente jurídica que justifica la preterición del cauce administrativo por ser innecesaria la pericia de la

agencia. Así, resolvió que el Art. 10(D) del Reglamento Núm. 9038, supra, está reñido con la Ley para el Uso de la Telemedicina, supra. En ese sentido, determinó que es la Junta de Licenciamiento y Disciplina Médica quien tiene primacía en la regulación de la telemedicina en Puerto Rico.

Aún insatisfecha, la Junta Reglamentadora de Cannabis Medicinal acudió ante este Tribunal y reiteró los planteamientos esbozados en los foros recurridos.

La Mayoría de los miembros de este Foro acogió los argumentos de la Junta Reglamentadora de Cannabis Medicinal. En consecuencia, la Sentencia que hoy emite este Tribunal concluye que la demanda fue presentada "a destiempo", pues la doctora Moreno Ferrer "no estableció hechos específicos y bien definidos que justifiquen preterir el trámite administrativo".[5] **Difiero de esta conclusión.**

Desde la presentación de la Demanda Jurada, la señora Moreno Ferrer precisó, sin ambages, la controversia de Derecho en la que basó su solicitud de injunction y sentencia declaratoria. Esto es: (1) que las actuaciones de la Junta Reglamentadora del Cannabis Medicinal son ultra vires porque la Ley para el Uso de la Telemedicina, supra, otorgó a la Junta de Licenciamiento y Disciplina Médica el poder exclusivo para regular la telemedicina;

---

[5]Sentencia, págs. 14-15.

(2) que la Ley Medicinal, <u>supra</u>, no facultó a la Junta Reglamentadora del Cannabis Medicinal para reglamentar la práctica de la telemedicina, y (3) que, por tanto, el Artículo 10(D) del Reglamento Núm. 9038, <u>supra</u>, es nulo en la medida que pretende reglamentar la telemedicina en Puerto Rico.[6]

A partir de entonces, y de forma consistente a través de todas las etapas del proceso, sus cuestionamientos han ido dirigidos a disputar, **no la cuantía de la multa**, sino la ausencia de autorización en ley para que la Junta Reglamentadora del Cannabis Medicinal —mediante reglamento— restrinja cómo se puede efectuar una recomendación médica para el uso de cannabis.

Es necesario destacar que, reiteradamente, este Tribunal ha resuelto que "**cuando se impugna <u>la autoridad en ley</u> de un municipio para imponer una contribución, y no así, por ejemplo, el monto de esta, 'resulta innecesario agotar el procedimiento administrativo dispuesto en ley'**". (Negrillas suplidas y énfasis suplido en el original). <u>Coop. Ahorros Rincón v. Mun. Mayaguez</u>, 200 DPR 546, 556-557 (2018) (citando a <u>Interior Developers v. Mun. de San Juan</u>, 177 DPR 693, 710 (2009)). Véanse, además, <u>Alcalde de Guayama v. ELA</u>, supra, pág. 338 (2015); <u>Yiyi Motors, Inc. v. E.L.A.</u>, 177 DPR 230, 279 (2009); <u>Mun. Trujillo Alto v. Cable TV</u>, 132 DPR 1008, 1011 (1993); <u>Compañía</u>

---

[6]Véase, Apéndice de <u>certiorari</u>, <u>Demanda Jurada</u>.

Azucarera del Toa v. Municipio, 76 DPR 331, 337 (1954)). **Nada impide la aplicación de un razonamiento similar bajo este contexto, pues, lo que la doctora Moreno Ferrer ha polemizado no ha sido propiamente la multa impuesta, sino la autoridad en ley de la Junta Reglamentadora del Cannabis Medicinal para regular la telemedicina.**

Siendo ello así, ¿realmente se justifica postergar la intervención judicial hasta tanto ya no existan más remedios administrativos disponibles? La respuesta es en la negativa.

Primeramente, destaco que, en este caso, no existe la necesidad de contar con una determinación final de la Junta Reglamentadora del Cannabis previo a acudir a los tribunales. La pericia de esa agencia no se extiende a interpretar la validez de su ley o reglamento a la luz del conflicto evidente con la Ley para el Uso de la Telemedicina, supra.

En el balance de factores, y ante la ausencia de algunos de los beneficios en que se apoya la doctrina de agotamiento de remedios, la balanza se inclina firmemente a condenar el uso de esa doctrina como cortapisas para denegar resolver esta controversia en los méritos.

En todo caso, la Junta de Reglamentación del Cannabis Medicinal está vedada de utilizar su discreción porque carece de conocimiento especializado sobre la Ley para el Uso de la Telemedicina, supra, por lo que lo cuestionado se escapa de su peritaje. **Esta controversia jurídica exige**

**una interpretación estatutaria en la que los tribunales, y no la Junta Reglamentadora del Cannabis Medicinal, son los especialistas.**

Por tanto, aquí en nada beneficiará que la Junta Reglamentadora del Cannabis Medicinal desarrolle un historial completo previo a la intervención judicial. La controversia es estrictamente jurídica. La continuación de los procedimientos en la vía administrativa será una gestión inútil, inefectiva y sin la facultad de ofrecer un remedio adecuado.[7]

En fin, el planteamiento de agotamiento de remedios es evidentemente inmeritorio y, en su lugar, procedía que este Tribunal validara la determinación de los foros recurridos al respecto. Tras ello, correspondía, entonces, atender el caso en los méritos. Veamos.

**III**

**A.**

La Junta Reglamentadora del Cannabis Medicinal fue creada en virtud de la Ley Medicinal, supra, y, entre sus miembros, se encuentra el Secretario del Departamento de Salud. Véase, 24 LPRA secs. 2622, 2622a. Cónsono con ello, y en lo pertinente, se le confirió el poder de emitir

---

[7]Después de todo, la finalidad de la doctrina de agotar remedios administrativos es clara: "[s]e requiere que se agot[e]n los remedios para evitar que el tribunal no goce de la pericia de la agencia administrativa y de un récord que esté completo". Fernández Quiñones, op. cit., pág. 620. Por lo expuesto, en este caso, esos fines son inconsecuentes.

reglamentos para instrumentar la ley habilitadora. 24 LPRA sec. 2622a(k).

En cumplimiento de lo anterior, el 2 de julio de 2018, se creó el Reglamento Núm. 9038, supra. Este, en su Art. 10(D), dispone que la recomendación médica que autoriza la utilización del cannabis medicinal podrá hacerse mediante el servicio de la telemedicina. Particularmente, allí se dispone que:

> El servicio de la telemedicina se utilizará en cumplimiento con todas las leyes y reglamentos, estatales y federales, referente a la práctica de la misma. No obstante, para propósitos de este Reglamento el servicio de la telemedicina tendrá que realizarse mediante el método audio visual entre el médico autorizado y el paciente. **No se permitirá el servicio de la telemedicina mediante llamadas telefónicas o cualquier otro método que no sea de manera audiovisual.** (Negrillas suplidas). Íd., pág. 16.

Según se desprende del artículo precitado, si bien se reconoce la aplicabilidad del servicio de telemedicina, ceñido a lo dispuesto en las leyes y reglamentos locales y federales que regulan la materia, se introduce por vía reglamentaria la restricción de que la recomendación del facultativo médico a un paciente tendrá que efectuarse a través de un método audiovisual. Asimismo, expresamente veda que la recomendación se lleve a cabo mediante llamadas telefónicas o cualquier otro medio que no sea audiovisual.

**B.**

Por otro lado, posterior a la aprobación del Reglamento Núm. 9038, supra, específicamente el 1 de agosto de 2018, se aprobó la nueva Ley para el Uso de la Telemedicina, supra. Con esta ley, la Asamblea Legislativa procuró el uso de la telemedicina como medio de apoyo al proveedor de servicios de salud con el fin de reducir costos, mejorar la calidad del servicio y el acceso al cuidado médico necesario. Véase, Íd., Exposición de Motivos. Con su aprobación, se propende a "**promover, facilitar e incorporar en nuestra jurisdicción los avances tecnológicos en la práctica médica**". (Negrillas suplidas). 20 LPRA sec. 6011b.

Específicamente, la Ley para el Uso de la Telemedicina, supra, define el término telemedicina como:

> [L]a práctica de la medicina a **distancia incorporando tanto el diagnóstico, el tratamiento y la educación médica mediante el uso de recursos tecnológicos para optimizar los servicios de atención en salud.** Los mismos deben incluir, pero sin limitarse, servicios complementarios e instantáneos a la atención de un especialista; diagnósticos inmediatos por parte de un médico especialista en un área o región determinada […]. (Negrillas suplidas). 20 LPRA sec. 6011a(c).

Según surge del artículo precitado, la Ley para el Uso de la Telemedicina, supra, no restringe la telemedicina únicamente a consultas audiovisuales, sino que definió la práctica de la telemedicina en términos

bien amplios. Tampoco surge de la definición, ni de cualquier otra disposición contenida en el estatuto precitado, alguna circunstancia o caso particular en el que, por ejemplo, se requiera el uso de un método de comunicación en específico. Ello es cónsono con la intención legislativa y obra en favor de una política pública que reconoce los avances tecnológicos existentes en la actualidad.

Por otra parte, la ley precitada delegó en la Junta de Licenciamiento y Disciplina Médica, adscrita al Departamento de Salud de Puerto Rico, el deber evaluar si determinado facultativo médico cuenta con los requisitos para ser autorizado a ejercer la telemedicina en Puerto Rico. Véase, 20 LPRA secs. 6011a(b), 6011d. Particularmente, el Art. 12 le confirió a la Junta de Licenciamiento y Disciplina Médica el poder de:

> [I]mplantar las reglas y reglamentos necesarios para dar cumplimiento a las disposiciones de esta Ley o que sean necesarios por la Práctica de la Telemedicina o Telesalud en Puerto Rico. **Al reglamentar todos los asuntos relacionados a la telemedicina** o telesalud deberán considerar, **sin que represente una limitación a su facultad de reglamentar la materia**, los comentarios, sugerencias y recomendaciones de la academia y los gremios y asociaciones que representen a los médicos, proveedores de salud y demás profesionales de la salud cobijados bajo esta Ley. (Negrillas suplidas). 20 LPRA sec. 6011k.

Como vemos, se desprende diáfanamente que es la Junta de Licenciamiento y Disciplina Médica el ente facultado

para implantar las reglas y los reglamentos que regulan la práctica de la telemedicina en Puerto Rico. Nótese que tal disposición permite concluir que es en esta Junta que recaerá el poder de "reglamentar todos los asuntos relacionados a la telemedicina".[8] Íd. Incluso, se les delegó el poder de, entre otros, imponer multas y hasta acudir a los tribunales con el propósito de garantizar su cumplimiento. 20 LPRA sec. 6011j.

Según se puede apreciar, la Asamblea Legislativa delegó en la Ley para el Uso de la Telemedicina, supra, y no en la Ley Medicinal, supra, la facultad para regular la telemedicina en Puerto Rico. **Dicho de otro modo, la facultad de reglamentar la telemedicina en Puerto Rico le**

---

[8]Adviértase que, en una ponencia emitida en relación con la aprobación de esta ley, el Secretario del Departamento de Salud, expresó que:

> [L]a [Junta de Licenciamiento y Disciplina Médica] **se encarga de vigilar** que la práctica de la Telemedicina se efectúe por médicos licenciados en Puerto Rico y en aquella jurisdicción donde habrán de ejercer la práctica de la Telemedicina y viceversa. **No conocemos de ningún precedente en ningún Estado, donde otra entidad que no sea la Junta o el Board, sea quien se encargue de ser el ente regulador del ejercicio de la práctica o de una de sus especialidades o prácticas.** (Negrillas suplidas).

Véase, Rafael Rodríguez Mercado, Memorial Explicativo al Proyecto del Senado Núm. 22 de 6 de marzo de 2017, Comisión de Salud, pág. 3.

**compete exclusivamente a la Junta de Licenciamiento y Disciplina Médica.**

Por tanto, la limitación establecida por la Junta Reglamentadora del Cannabis Medicinal al ejercicio de la telemedicina revela: (1) que no estuvo autorizada por la Ley Medicinal, supra; (2) que a tal junta no se le delegó el poder de reglamentación de la telemedicina; (3) y que, por consiguiente, la restricción contenida en el Reglamento Núm. 9038, supra, a los efectos de que la recomendación médica no puede ser autorizada mediante llamada telefónica, es ultra vires por no estar dentro de los poderes delegados. Véase, Vitas Health Care Corporation v. Hosp. La Fe, 190 DPR 56, 66-67 (2014) (citando a OEG v. Santiago Guzmán, 188 DPR 215 (2013); Buono Correa v. Srio. Rec. Naturales, 177 DPR 415, 449-450 (2009); Franco v. Depto. de Educación, 148 DPR 703, 711-712 (1999)).

Surge con claridad, además, que la Ley para el Uso de la Telemedicina, supra, ni la Ley Medicinal, supra, restringen de modo alguno la manera en que un facultativo médico debe realizar la recomendación de cannabis medicinal y, mucho menos, sancionan que esta se haga mediante comunicación telefónica. Tampoco estas leyes han otorgado expresamente a sus respectivas juntas el poder para que limiten o exceptúen la recomendación de cannabis medicinal mediante la telemedicina.[9]

---

[9] De hecho, se han producido esfuerzos legislativos por parte de legisladores particulares con el fin de

A pesar de lo anterior, la <u>Sentencia</u> que hoy emite este Tribunal concluye que la doctora Moreno Ferrer no podía acudir al tribunal a impugnar la reglamentación claramente <u>ultra vires</u> que se le intenta aplicar. Al respecto, resulta revelador uno de los fundamentos utilizados para determinar que no se cumplió con alguna

requerir que la primera visita en la que un facultativo médico recomienda el uso de cannabis medicinal sea realizada presencialmente, así como también para eliminar la licencia que se le requiere a los médicos para poder realizar tal recomendación. **Sin embargo, estos no se convirtieron en ley**. Véase, P. del S. 1317 de 17 de junio de 2019, 5ta Sesión Ordinaria, 18va Asamblea Legislativa, Art. 2(u), pág. 5.

Resáltese que, en reacción a este proyecto, el entonces Secretario de Salud, expresó lo siguiente:

> [N]o tenemos reparo en que la evaluación inicial se haga **cónsono a lo dispuesto en la Ley Núm. 168-2018**, conocida como la **Ley para el uso de la Telemedicina en Puerto Rico, la misma le otorga poder exclusivo para regular la telemedicina** a la Junta de Licenciamiento y Disciplina Médica de Puerto Rico [...]. **La Ley 168 antes citada, amplía las opciones mediante las cuales se puede practicar la telemedicina, no la limita a un método particular, como lo sería el método audiovisual**. De esta manera tiene la ventaja que provee acceso para aquellos que no puedan trasladarse al consultorio médico, puedan obtener la recomendación médica necesaria para la certificación como paciente o para la renovación de la misma. (Negrillas suplidas).

Véase, Rafael Rodríguez Mercado, <u>Memorial Explicativo sobre el Proyecto del Senado 1317</u> de 11 de octubre de 2019, Comisión de Salud, pág. 2.

de las excepciones que viabilizan preterir el trámite administrativo. Específicamente, la Sentencia indica que:

> [P]or lo delicado que resulta el establecer el esquema regulatorio necesario para asegurar que el uso del cannabis sea únicamente para propósitos medicinales, resulta conveniente que sea la [Junta Reglamentadora del Cannabis Medicinal], por su conocimiento especializado, la que realice -en este caso- la evaluación tanto en asuntos fácticos, como en los asuntos de derecho.[10]

A mi juicio, lo delicado del esquema regulatorio y el fin de asegurar que el uso del cannabis medicinal sea únicamente para propósitos medicinales no rebaten que se trata de una controversia estrictamente jurídica que justifica preterir el trámite administrativo. Peor aún, de la aseveración antes citada se intima una validación sub silentio de la limitación al ejercicio de la telemedicina realizada por la Junta Reglamentadora del Cannabis Medicinal, sin autoridad en ley y contraria a la política pública de maximizar la tecnología para beneficio de la salud del Pueblo.

En todo caso, la doctrina de agotamiento de remedios administrativos es una de conveniencia compatible con la justicia, por lo que su interpretación inflexible no puede desembocar en la frustración de un derecho o, peor aún, en la negación de un remedio. González Saldaña v. Tribunal Superior, 92 DPR 477, 487 (1965). Lamentablemente, este

---

[10]Véase, Sentencia, pág. 19.

Tribunal obvia esa realidad y, bajo el pretexto de estar atado a esta doctrina, injustificadamente cortapisa la intervención judicial en estos momentos.

En fin, insisto en que la Junta Reglamentadora del Cannabis Medicinal se excedió de sus facultades al limitar que la recomendación médica de cannabis medicinal, en el caso de la telemedicina, solo puede ser realizada por un método audiovisual.

Por consiguiente, procedía que confirmáramos la nulidad del Art. 10(D) del Reglamento Núm. 9038, _supra_, y que decretáramos que la recomendación médica realizada por la doctora Moreno Ferrer fue conforme a Derecho.

## IV

Por las razones antes expuestas, reitero que esta controversia, por ser una de estricto Derecho, hacía inmeritorio el cumplimiento con la doctrina de agotamientos de remedios administrativos. Procedía, entonces, que este Tribunal descartara su aplicación inerte y, de este modo, rechazara la limitación _ultra vires_ impuesta al ejercicio de la telemedicina en el contexto del cannabis medicinal. Toda vez que así no lo hizo, y con ello dilata innecesariamente la resolución de esta controversia, disiento.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Dra. Liana Moreno Ferrer

      Recurrida

        v.                     CC-2020-0192    *Certiorari*

Junta Reglamentadora del
Cannabis Medicinal

      Peticionaria

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 20 de mayo de 2022.

Por considerar que en el presente caso el Tribunal de Primera Instancia -- foro que, a todas luces, tenía jurisdicción para entender en las controversias relacionadas al mismo -- actuó correctamente al decretar la nulidad del Art. 10(D) del Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites, *infra*, de la Junta Reglamentadora del Cannabis Medicinal, respetuosamente disentimos del curso de acción seguido por una mayoría de este Tribunal en el día de hoy.

En esa dirección, y en lo que respecta a la causa de epígrafe, somos de la opinión que mis compañeros y compañera de estrado fallan malamente al ampararse en lo dispuesto en la doctrina de agotamiento de remedios administrativos para sentenciar que el foro primario carecía de jurisdicción para entender en el presente litigio. Declarar -- como una mayoría de este Tribunal hoy lo hace -- que el Tribunal de Primera Instancia no tenía jurisdicción para entrar a dilucidar los asuntos ante su consideración solo puede lograrse mediante una clara abstracción del derecho aplicable en materia de impugnación de reglamentos administrativos en su aplicación.

**Esa visión no la compartimos**. Mucho menos cuando ésta tiene el efecto de privar a nuestra ciudadanía del acceso fácil y rápido, mediante el uso de los recursos tecnológicos, a un medicamento -- aquí lo es el cannabis medicinal, pero igual pudiese ser otro -- para aliviar los problemas de salud que les afecten; una vez el mismo es prescrito por un facultativo médico debidamente autorizado a ejercer la profesión en Puerto Rico. Veamos.

## I.

Los hechos medulares que dan margen al presente litigio no están en controversia. El 13 de mayo de 2019 la Dra. Liana Moreno Ferrer (en adelante, "doctora Moreno Ferrer") presentó ante el foro primario una *Demanda Jurada* sobre sentencia declaratoria e interdicto preliminar y

permanente en contra de la Junta Reglamentadora del Cannabis Medicinal. En su escrito, indicó que el 19 de abril de 2019 dicha instrumentalidad le remitió una *Notificación de Infracción* donde se le imputó haber violado el Art. 10(D) del Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites*, Reglamento Núm. 9038 de 2 de julio de 2018 (en adelante, "Reglamento 9038"). Lo anterior, por haber brindado una recomendación médica para que se autorizara el uso de cannabis medicinal a cierto paciente mediante el mecanismo de la telemedicina.[1] Explicó que, conforme a la mencionada *Notificación de Infracción*, se le impuso una multa administrativa de $5,000.00 (como primera infracción leve), la cual debía pagar dentro del término de quince (15) días, y que se le apercibió sobre su derecho a solicitar una vista administrativa para impugnar la misma.

Sin embargo, la doctora Moreno Ferrer adujo que, a su modo de ver, la actuación de la Junta Reglamentadora del Cannabis Medicinal era *ultra vires*. Al respecto, sostuvo que la entidad de referencia carecía de autoridad para reglamentar la práctica de la telemedicina en nuestra jurisdicción. En específico, arguyó que, al

---

[1] Ello, tras la referida consulta médica haberse efectuado mediante llamada telefónica únicamente, y no a través de un método audiovisual, entiéndase, en formato de video y llamada.

imponerle la aludida multa, la Junta Reglamentadora del Cannabis Medicinal se arrogó poderes que le fueron delegados de forma expresa a la Junta de Licenciamiento y Disciplina Médica (en adelante, "Junta de Licenciamiento") en virtud de la Ley Núm. 168-2018, *infra*, conocida como Ley para el Uso de la Telemedicina en Puerto Rico (en adelante, "Ley de la Telemedicina").

Así pues, la doctora Moreno Ferrer impugnó la validez del Art. 10(D) del Reglamento 9038, *supra*, por entender que éste constituía una limitación irrazonable al ejercicio de la telemedicina en Puerto Rico y era contrario a derecho. Sobre este particular, subrayó que, de conformidad con nuestro ordenamiento jurídico, cualquier persona afectada por la aplicación de un reglamento podía impugnar la validez de éste ante el Tribunal de Primera Instancia en cualquier momento a través de los mecanismos de sentencia declaratoria e *injuction*. Por tanto, solicitó que se declarara la nulidad del mencionado artículo y que se emitiera un interdicto permanente para que la Junta Reglamentadora del Cannabis Medicinal cesara y desistiera de reglamentar, más allá de lo permitido, la práctica de la telemedicina en el País.

Examinado el recurso presentado por la doctora Moreno Ferrer, el foro primario notificó una *Orden.* Mediante esta última, el Tribunal de Primera Instancia le concedió un plazo de veinticuatro (24) horas a la

galena para que mostrara causa por la cual no debía desestimarse su acción al amparo de la doctrina de agotamiento de remedios administrativos.

Oportunamente, la doctora Moreno Ferrer compareció mediante *Moción en cumplimiento de orden*. En esencia, sostuvo que su contención era una de estricto derecho para la cual resultaba innecesaria la pericia administrativa, a saber: si la Junta Reglamentadora del Cannabis Medicinal estaba facultada o no para regular la práctica de la telemedicina en Puerto Rico o si tal función recaía única y exclusivamente en la Junta de Licenciamiento, según dispone la Ley de la Telemedicina, *infra*. Además, planteó que la solicitud de un remedio ante la Junta Reglamentadora del Cannabis Medicinal constituiría un ejercicio fútil e incierto, toda vez que, a esa fecha, dicho foro administrativo aún no contaba con oficiales examinadores que pudieran celebrar la correspondiente vista administrativa.

Enterada de lo anterior, la Junta Reglamentadora del Cannabis Medicinal radicó una moción de desestimación. En ésta, adujo que era improcedente dictar una sentencia declaratoria y un remedio interdictal en el caso de autos. Lo anterior, debido a que la doctora Moreno Ferrer no había establecido la existencia de un daño irreparable ni que el remedio administrativo disponible fuera inadecuado. Consecuentemente, sostuvo que las alegaciones de la galena eran estrictamente pecuniarias,

mientras que aseguró haber actuado conforme a su ley habilitadora y los reglamentos aplicables. Por todo ello, solicitó la desestimación de la causa de acción en su contra por falta de jurisdicción.

Superados varios trámites procesales no necesarios aquí pormenorizar, entre ellos la celebración de una vista evidenciaria,[2] la doctora Moreno Ferrer presentó su oposición a la moción de desestimación instada por la Junta Reglamentadora del Cannabis Medicinal. En suma, repitió sus anteriores alegaciones y, entre otras cosas, enfatizó que su causa de acción no debía ser desestimada, pues sus argumentos superaban el reclamo pecuniario, ciñéndose más bien a un asunto de daño incalculable sobre su reputación y práctica profesional. Asimismo, insistió en que el Tribunal de Primera Instancia era el lugar adecuado para entender en la impugnación de un reglamento administrativo en su aplicación.

Luego de examinar los argumentos de ambas partes, el 21 de junio de 2019 el Tribunal de Primera Instancia notificó una *Sentencia* mediante la cual declaró *con lugar* la demanda sobre sentencia declaratoria e interdicto preliminar y permanente incoada por la doctora Moreno Ferrer. En apretada síntesis, el foro primario determinó que: 1) acogería las alegaciones bien formuladas en la

---

[2] A dicha vista acudieron las partes involucradas en el presente litigio, así como la Asociación de los Miembros del Cannabis Medicinal de Puerto Rico, a la cual se le autorizó a intervenir en el presente litigio.

demanda puesto que los hechos estaban incontrovertidos y solo existía una controversia de derecho; **2) de una evaluación de la Ley de la Telemedicina, *infra*, se desprendía claramente que la entidad con la capacidad legal y la pericia para regular la telemedicina en Puerto Rico era la Junta de Licenciamiento,** y **3) la ley habilitadora de la Junta Reglamentadora del Cannabis Medicinal y el Reglamento 9038, *supra*, se establecieron exclusivamente para atender asuntos sobre el referido fármaco y no sobre la telemedicina.**

Así las cosas, el Tribunal de Primera Instancia concluyó que el Art. 10(D) del Reglamento 9038, *supra*, de la Junta Reglamentadora del Cannabis Medicinal –- el cual, según mencionamos, disponía exclusivamente lo relativo al referido fármaco y no sobre la telemedicina –- era nulo por ser contrario a lo estatuido en las leyes habilitadoras aplicables. Razonó que "[p]ermitirle a la [Junta Reglamentadora del Cannabis Medicinal] regular algún tema fuera del cannabis, como lo sería la telemedicina, implicaría contravenir las disposiciones de la [Ley de la Telemedicina, *infra*], que ya facultó ese aspecto a la Junta de Licenciamiento". Véase, Apéndice del *certiorari*, págs. 455-456.

En desacuerdo con la determinación del foro primario, la Junta Reglamentadora del Cannabis Medicinal acudió al Tribunal de Apelaciones mediante recurso de apelación. Allí, dicha entidad señaló que el Tribunal de

Primera Instancia había incidido al declarar *con lugar* la demanda de epígrafe y al relevar a la doctora Moreno Ferrer de agotar los remedios administrativos provistos en ley para canalizar los reclamos en contra de la imposición de la multa en cuestión, por éstos ser adecuados y completos. Con igual tono, esgrimió que el foro recurrido también erró al determinar que la Junta Reglamentadora del Cannabis Medicinal usurpó la facultad de la Junta de Licenciamiento de reglamentar la telemedicina al aprobar el Art. 10(D) del Reglamento 9038, *supra*. Ante ello, la doctora Moreno Ferrer presentó su alegato en oposición, en donde insistió en los argumentos esgrimidos ante el foro primario.

Examinados los alegatos de ambas partes, el 30 de enero de 2020 el foro apelativo intermedio emitió una *Sentencia* mediante la cual confirmó el dictamen del Tribunal de Primera Instancia. De entrada, resolvió que, aun cuando la Junta Reglamentadora del Cannabis Medicinal hubiese demostrado que contaba con el andamiaje adecuado para entender en la impugnación de la doctora Moreno Ferrer -- asunto que dicho foro respondió en la negativa -- lo cierto era que acudir a ese trámite hubiese sido un ejercicio fútil, toda vez que la controversia medular era de estricto derecho y no requería la pericia administrativa. **En esa dirección, el aludido foro concluyó que la doctora Moreno Ferrer actuó acertadamente al entablar una demanda sobre sentencia declaratoria e**

**interdicto, pues éstos eran los mecanismos adecuados para revisar la validez de determinada regla administrativa en su aplicación.**

De forma similar, el Tribunal de Apelaciones **sentenció que, si bien de la ley habilitadora de la Junta Reglamentadora del Cannabis Medicinal se desprendía que la intención legislativa al promulgar dicha medida estuvo dirigida a salvaguardar el interés público y a evitar el despacho indiscriminado del cannabis medicinal, ello no era suficiente para concederle a esa entidad la facultad de regular la telemedicina.** Lo anterior, en consideración a que la Ley de la Telemedicina, *infra*, y su reglamentación aplicable conferían dicha facultad, precisamente, a la Junta de Licenciamiento. **Advirtió, además, que la Ley de la Telemedicina, *infra*, "no contiene limitación u objeción alguna respecto a la posibilidad de utilizar llamadas telefónicas para el ejercicio de la telemedicina, mientras que la [Junta Reglamentadora del Cannabis Medicinal] le impone trabas a este mecanismo".** Véase, *Sentencia* del Tribunal de Apelaciones, pág. 23. Por todo lo cual, dictó que el Art. 10(D) del Reglamento 9038, *supra*, era nulo.

Insatisfecho con el proceder de los foros *a quo*, el 24 de junio de 2020 la Junta Reglamentadora del Cannabis Medicinal -- representada por la Oficina del Procurador General -- recurrió ante este Foro mediante el presente

recurso de *certiorari*.[3] En resumen, insiste en que los foros recurridos erraron al permitir que la doctora Moreno Ferrer pretiriera el trámite administrativo y al declarar la nulidad del Art. 10(D) del Reglamento 9038, *supra*.

Por su parte, la doctora Moreno Ferrer presentó su alegato en oposición. En suma, sostiene la validez de las determinaciones emitidas por los foros inferiores.

Trabada así la controversia, y con el beneficio de la comparecencia de ambas partes en el litigio, una mayoría de esta Curia resuelve que, contrario a lo sentenciado por los foros *a quo*, no procedía relevar a la doctora Moreno Ferrer de agotar el procedimiento administrativo, toda vez que en dicho proceso contaba con un remedio adecuado y completo en ley para impugnar la multa impuesta y su reclamo respecto a la nulidad del Art. 10(D) del Reglamento 9038, *supra*. Como adelantamos, de dicho proceder, respetuosamente disentimos. Nos explicamos.

II.

A.

Como es sabido, la doctrina de agotamiento de remedios administrativos es una norma del principio de abstención judicial que, de ordinario, aplica cuando una parte, "**que instó o tiene instada** alguna acción ante una

---

[3] Dicho recurso fue oportunamente presentado de conformidad con la *Resolución EM-2020-0012* emitida por este Tribunal.

agencia u organismo administrativo, recurre luego ante un tribunal sin antes haber completado todo el trámite administrativo disponible". (Énfasis suplido). *Ortiz v. Panel F.E.I.*, 155 DPR 219, 242 (2001). Véase, también, M. Izquierdo Encarnación, *Introducción al Derecho Administrativo*, 3ra ed., San Juan, Ed. SITUM, 2017, págs. 222-223. De manera que, cuando la acción en cuestión se presenta directamente ante un tribunal, obviando así el proceso provisto ante la agencia, "no habrá duda de que se trata de un asunto de jurisdicción primaria, y no de agotamiento de remedios administrativos". *Ortiz v. Panel F.E.I.*, *supra*, pág. 244. Véase, también, Izquierdo Encarnación, *op. cit*, págs. 219-220; D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013, Sec. 8.8, pág. 626-627.

B.

Aclarado lo anterior, conviene recordar aquí que la Sección 2.7 de la Ley Núm. 38-2017, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (en adelante, "LPAU"), 3 LPRA sec. 9617, dispone el proceso para que una persona impugne la validez de su *faz* de una regla o reglamento. Lo anterior, cuando la mencionada persona entienda que dicha regla o reglamento se adoptó al margen de las disposiciones de la precitada ley. *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 391 (2018); *Centro Unido Detallistas v. Com. Serv.*

*Púb.*, 174 DPR 174, 183 (2008); *J.P. v. Frente Unido I*, 165 DPR 445, 462 (2005). Véase, también, Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, *op. cit.*, Sec. 3.2, págs. 138-142.

De otra parte, y distinto al proceso antes aludido, en inumerables ocasiones, este Tribunal ha señalado que **"cualquier persona afectada por <u>la aplicación</u> de un reglamento puede impugnar su validez ante el Tribunal de Primera Instancia en cualquier momento, ya sea por razones constitucionales o por otros motivos"**. (Énfasis suplido). *Centro Unido Detallistas v. Com. Serv. Púb.*, *supra*, págs. 184-185. Véase, también, W. Vázquez Irizarry, *Derecho Administrativo*, 79 Rev. Jur. UPR 647, 655-656 (2010). **Al así hacerlo, sentenciamos que las disposiciones provistas en la LPAU, *supra*, para impugnar una reglamentación de su faz distan de cualquier proceso que pueda iniciar un ciudadano o una ciudadana agraviado(a) por la aplicación de una regla o un reglamento de una agencia que, a su juicio, carezca de validez.** *Centro Unido Detallistas v. Com. Serv. Púb.*, *supra*, pág. 185; *Asoc. Dueños Casas Parguera, Inc. v. J.P.*, 148 DPR 307, 315 (1999). Véase, también, J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* San Juan, Ed. SITUM, 2008, págs. 82-83. **Al respecto, hemos dispuesto que el *injuction* y la sentencia declaratoria son los recursos judiciales**

**adecuados para impugnar una regla o un reglamento en su aplicación ante el foro primario**. *Vázquez Irizarry, supra,* citando a *J.P. v. Frente Unido I*, *supra*, pág. 463, y *Asoc. Dueños Casas Parguera, Inc. v. J.P.*, *supra*, pág. 315, n. 4.;[4] D. Fernández Quiñones, *La revisión judicial de las decisiones administrativas,* 69 REV. JUR. UPR 1129, 1147 (2000).

En esa dirección, -- entiéndase, una vez impugnada una regla o un reglamento administrativo <u>en su aplicación</u> --, también hemos establecido que los tribunales deberán evaluar la referida impugnación a la luz de la ley habilitadora o del estatuto orgánico de la agencia administrativa en cuestión. *Pueblo v. Barahona Gaitán*, 201 DPR 567, 576-577 (2018); *Perfect Cleaning v. Cardiovascular*, 162 DPR 745, 758-759 (2004); Fernández Quiñones, *La revisión judicial de las decisiones administrativas*, *supra*, págs. 1148-1149. Al emprender esa tarea, se deberá examinar lo siguiente: 1) si la actuación administrativa estaba autorizada por ley; 2) si se le delegó el poder de reglamentación; 3) **si la reglamentación promulgada estaba dentro de los poderes delegados;** 4) si se cumplió con las normas procesales de

---

[4] En específico, el profesor Vázquez Irizarry nos explica que, "si el caso es producto de la aplicación del reglamento, quien resulte afectado o afectada podrá impugnarlo en los tribunales sin las condiciones y limitaciones de la sección 2.7. Al no existir un remedio específico para ello, la persona interesada tendría que acudir ante el Tribunal de Primera Instancia, como foro de jurisdicción original general, posiblemente en un recurso de sentencia declaratoria e injunction". *Íd*.

la ley orgánica y de las leyes especiales al aprobarse el reglamento, y 5) **si la reglamentación en cuestión es arbitraria o caprichosa**. *Pueblo v. Barahona Gaitán*, *supra*, pág. 576; *Fuentes Bonilla v. ELA et al.*, *supra*, págs. 391-392; *Vitas Health Care v. Hospicio La Fe et al.*, 190 DPR 56, 66-67 (2014).

En consecuencia, cuando un estatuto delimita el ámbito de acción de una agencia administrativa, todo aquello que trascienda la autoridad allí delegada es *ultra vires* y, por consiguiente, nulo. *Pueblo v. Barahona Gaitán*, *supra*, págs. 576-577; *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 560 (2014); *Perfect Cleaning v. Cardiovascular*, *supra*; Fernández Quiñones, *La revisión judicial de las decisiones administrativas*, *supra*, pág. 1149.

III.

Por otro lado, y ya más en lo relacionado a las controversias que nos ocupan, es menester señalar que la Ley Núm. 42-2017, conocida como Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites (en adelante, "Ley Núm. 42-2017"), 24 LPRA sec. 2621 *et seq.*, tiene el loable y meritorio propósito de adoptar como política pública del País un marco regulatorio que permita una alternativa legítima de tratamiento con cannabis para las personas con ciertas condiciones médicas. Asimismo, con la adopción de esta ley, se buscó priorizar el rol de la

investigación y el desarrollo científico e integración de la Academia en el estudio de esta medicina.

De la aludida pieza legislativa, también surge que, como corolario de lo anterior, se creó la Junta Reglamentadora del Cannabis Medicinal, la cual, entre otras tareas, procura requerir la preparación de grados académicos, cursos y educación continua a las distintas personas que participan en la industria. Por igual, decretó la creación de un orden regulatorio para la supervisión de todas las etapas del proceso de investigación, cultivo, manufactura, laboratorios, transportación y dispensación del cannabis.

En esa dirección, los Arts. 4 y 5 de la Ley Núm. 42-2017, 24 LPRA secs. 2622-2622a, regulan todo lo relacionado a la composición y a las facultades delegadas a la Junta Reglamentadora del Cannabis Medicinal. En lo pertinente, se establece que dicho cuerpo podrá emitir reglamentos para instrumentar la ley de referencia conforme a lo dispuesto en la LPAU, *supra*. Asimismo, se faculta a la Junta Reglamentadora del Cannabis Medicinal para emitir, negar, revocar, suspender, restringir licencias e imponer multas administrativas de conformidad con las disposiciones de la referida ley y los reglamentos que se promulguen para instrumentarla, entre otras facultades que sean necesarias para lograr los propósitos de ésta. *Íd*.

En virtud de lo anterior, la Junta Reglamentadora del Cannabis Medicinal aprobó el Reglamento 9038, *supra* -- Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites --*,* con el propósito de establecer las reglas que regirían los procesos relacionados a la radicación, trámite y adjudicación de las solicitudes que se presenten ante ella. Así, y sobre la recomendación médica, el Art. 10(D) del referido cuerpo reglamentario, *supra*, establece que:

> El servicio de la telemedicina se utilizará en cumplimiento con las leyes y reglamentos estatales y federales, referente a la práctica de la misma. No obstante, para propósitos de este Reglamento el servicio de telemedicina tendrá que realizarse mediante el método audio visual entre el médico autorizado y el paciente. **No se permitirá el servicio de telemedicina mediante llamadas telefónicas o cualquier método que no sea de manera audio visual.** (Énfasis suplido).

Es decir, la mencionada Junta prohibió las llamadas telefónicas como método para brindar los servicios de la telemedicina en Puerto Rico en el contexto del cannabis medicinal.

IV.

Dicho ello, y por resultar en extremo pertinente para la correcta disposición de los asuntos ante nuestra consideración, precisa señalar que la Ley Núm. 168-2018, conocida como Ley para el Uso de la Telemedicina en Puerto Rico, 20 LPRA sec. 6011 *et seq.*, es el estatuto que rige todo lo relacionado a dicha práctica en nuestra

jurisdicción. Según se desprende de su Exposición de Motivos, ésta se creó con el propósito de actualizar y atemperar la legislación existente a los adelantos tecnológicos del Siglo XXI, y como garantía de que el servicio de la telemedicina fuese ofrecido por un facultativo médico debidamente autorizado a ejercer la profesión en Puerto Rico. Exposición de Motivos de la Ley Núm. 168-2018, 2019 (Parte II) Leyes de Puerto Rico 1585. Igualmente, surge que la intención legislativa al aprobar la Ley de la Telemedicina, *supra*, fue "eliminar las barreras existentes que limita[ba]n el acceso a servicios de salud imprescindibles para los ciudadanos de nuestro [P]aís". *Íd.*, pág. 1587.

Según definida, la telemedicina es "la práctica de la medicina a distancia incorporando tanto el diagnóstico, el tratamiento y la educación médica mediante el uso de recursos tecnológicos para optimizar los servicios de atención en salud". Art. 2 de la Ley de la Telemedicina, 20 LPRA sec. 6011a. En específico, esta práctica debe incluir, aunque sin limitarse, "servicios complementarios e instantáneos a la atención de un especialista; diagnósticos inmediatos por parte de un médico especialista en un área o región determinada; educación remota de alumnos de las escuelas de enfermería, profesionales de la salud y medicina; servicios de archivo digital de exámenes radiológicos, ecografías, emergencias médicas y otros". *Íd.*

**Además, los Arts. 4, 7, 11 y 12 de la Ley de la Telemedicina, 20 LPRA secs. 6011c, 6011f, 6011j-k, establecen que la Junta de Licenciamiento -- creada por virtud de la Ley Núm. 139-2008 --[5] ostenta la <u>facultad exclusiva</u> para regular la práctica de la telemedicina en nuestro País.** Particularmente, le confirió jurisdicción para adoptar reglas o reglamentos a los fines de, entre otras cosas, autorizar, evaluar e imponer penalidades a los proveedores de la telemedicina y cualquier otro asunto relacionado a esta práctica en Puerto Rico. *Íd.*

Es, pues, a la luz de la normativa antes expuesta, y no de otra, que procedía disponer de la causa de epígrafe. Como una mayoría de este Tribunal no lo hizo, procedemos -- desde la disidencia -- a así hacerlo.

V.

Como mencionamos anteriormente, en el presente caso, la Junta Reglamentadora del Cannabis Medicinal señala que los foros *a quo* incidieron al relevar a la doctora Moreno Ferrer de agotar determinado procedimiento administrativo y al declarar la nulidad del Art. 10(D) del Reglamento 9038, *supra*. No le asiste la razón.

De los hechos ante nuestra consideración, surge con meridiana claridad que la causa de epígrafe se originó cuando la doctora Moreno Ferrer -- quien está autorizada a emitir recomendaciones médicas para el uso del cannabis

---

[5] Conocida como Ley de la Junta de Licenciamiento y Disciplina Médica, 20 LPRA sec. 131 *et seq.*

medicinal en Puerto Rico -- recibió una notificación de infracción y, consecuentemente, una multa de $5,000.00 por violación al Art. 10(D) del Reglamento 9038, *supra*, de la Junta Reglamentadora del Cannabis Medicinal. Ante ello, la galena acudió directamente -- como debía hacerlo -- ante el Tribunal de Primera Instancia mediante el recurso de sentencia declaratoria e interdicto preliminar y permanente, por estar inconforme con lo notificado y por entender que la actuación de la referida entidad -- en su aplicación -- era *ultra vires*.

Y es que no podía ser de otra forma. Tal cual prescribe el derecho y la jurisprudencia aplicable, y según adelantamos, cuando una persona afectada por la aplicación de una regla o un reglamento administrativo desee impugnar su validez, ésta deberá acudir al foro primario. Así sucedió en el caso de autos.

La doctora Moreno Ferrer acudió correctamente ante el Tribunal de Primera Instancia para impugnar la Regla 10(D) del Reglamento 9038, *supra*, en su aplicación. No cabe hablar aquí pues, -- como una mayoría de mis compañeros y compañera de estrado señalan --, de iniciar un trámite ante la entidad en cuestión y mucho menos de la doctrina de agotamiento de remedios administrativo.

Superado el asunto jurisdiccional, y en lo pertinente a la controversia que nos ocupa, correspondía entonces, -- tal y como lo hicieron los foros inferiores --, que evaluáramos si la actuación de la Junta

Reglamentadora del Cannabis Medicinal, al imponer requisitos adicionales a los ya establecidos por la Junta de Licenciamiento a la práctica de la telemedicina, resultaba arbitraria y caprichosa, o si, por el contrario, estaba comprendida dentro de los poderes delegados en su ley habilitadora. En ese sentido, somos de la opinión que, si una mayoría de este Tribunal hubiera realizado dicho ejercicio, habría advertido que evitar el despacho indiscriminado del cannabis medicinal no es suficiente razón para concederle a la Junta Reglamentadora del Cannabis Medicinal la facultad de regular la telemedicina, en el contexto del cannabis medicinal, de manera más rigurosa a lo establecido en la propia Ley de la Telemedicina, *supra*. Lo anterior se hace más patente cuando notamos que la precitada disposición legal y su reglamentación no contienen limitación alguna respecto a la posibilidad de utilizar llamadas telefónicas para practicar la telemedicina.

Sin embargo, lejos de lo antes reseñado, la mayoría de esta Curia -- aun cuando sostiene que en el caso de autos el cauce para impugnar la aplicación de una regla o un reglamento era el administrativo y no el judicial --, entra en los méritos de la controversia y valida innecesariamente la limitación a la práctica de la telemedicina. Ello, al sugerir que declarar la nulidad de la regla impugnada crearía un escenario inseguro para el uso de un fármaco que debe ser utilizado únicamente

para propósito medicinal. Disentimos. **Bajo ese supuesto, ninguna consulta médica mediante la práctica de la telemedicina (en particular, vía telefónica) en la que se recomiende el uso de un medicamento controlado sería segura.** El cannabis medicinal no debe merecer un tratamiento distinto a ningún otro medicamento controlado. No, al menos, para el juez que suscribe.

## VI.

**En fin, y a modo de epílogo, el caso de marras representaba una oportunidad única para asegurar mayor acceso a las personas con ciertas condiciones médicas a una alternativa legítima de tratamiento, como lo es el cannabis medicinal. No obstante, la mayoría de este Foro, con su cargado proceder, evade implementar la política pública en la materia bajo estudio y, en su lugar, permite que se le impongan innecesarias cortapisas. Con ello, no podemos estar de acuerdo. La salud de nuestro Pueblo va primero.**

## VII.

Es, pues, por los fundamentos antes expuestos que respetuosamente disentimos.

Ángel Colón Pérez
Juez Asociado
